RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0326p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

BENNY LEE HODGE,

*Petitioner-Appellant,*

*v.*

No. 06-6027

GLENN HAEBERLIN, Warden,

*Respondent-Appellee.*

———————————

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 04-00185—Karen K. Caldwell, District Judge.

Argued: October 21, 2008

Decided and Filed: September 4, 2009

Before: MARTIN, ROGERS, and COOK, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Laurence E. Komp, LAW OFFICE, Manchester, Missouri, for Appellant. Julie Scott Jernigan, OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee. **ON BRIEF:** Laurence E. Komp, LAW OFFICE, Manchester, Missouri, Armand I. Judah, JUDAH-McLEOD, Louisville, Kentucky, for Appellant. Ian G. Sonego, OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee.

ROGERS, J., delivered the opinion of the court, in which COOK, J., joined. MARTIN, J. (pp. 29-35), delivered a separate dissenting opinion.

———————————

## OPINION

———————————

ROGERS, Circuit Judge. The district court properly denied habeas corpus in this case because petitioner Benny Lee Hodge has not shown that his trial counsel rendered ineffective assistance. A jury convicted Hodge and sentenced him to death for his role in a

1985 double murder. Hodge advances numerous claims of ineffective assistance of counsel, including a claim that counsel prevented Hodge from testifying on his own behalf and that counsel ineffectively cross-examined the prosecution's key witness. Because the record does not show that any alleged mistake by Hodge's counsel meets the standards for deficient performance and prejudice established by *Strickland v. Washington*, 466 U.S. 668 (1984), Hodge is not entitled to habeas relief.

## I. Background

Edwin and Bessie Morris were murdered in their home in Jackson County, Kentucky, on the night of June 16, 1985. The elderly couple's adult son discovered their bodies the next morning. A Jackson County grand jury indicted petitioner Benny Lee Hodge and his co-defendants Donald Bartley and Roger Dale Epperson for robbery, burglary, and murder. After a change of venue to Laurel County, Hodge was tried in 1987. Donald Bartley testified against Hodge at trial. According to Bartley, he, Epperson, and Hodge made extensive plans to carry out the robbery. Among other things, they rented a campsite to serve as a staging ground, purchased gloves, and borrowed a van registered under someone else's name to shield their identities. Bartley testified that on the night of the murders, he remained in the van as a lookout while Hodge and Epperson entered the Morris home. From Bartley's vantage point in the van, he could observe some of the events that took place in the house through the window. Bartley testified that he observed the other two men enter the house, draw their weapons, and knock Mr. Morris to the floor. Although Bartley was unable to see the remainder of the events, he heard several shots before Hodge and Epperson emerged from the house with money, Mr. Morris's handgun, and other valuables. Bartley testified that after the murders, the men wiped down the three guns (Hodge's, Epperson's, and Mr. Morris's) and threw them in the river. These guns were never recovered, despite Bartley's participation in the search. Bartley also testified that the men returned to the campsite and burned several incriminating items, including Hodge's blood-stained clothes. Sherry Hamilton, Hodge's then wife, did not testify at trial but spoke openly with the media claiming that Hodge was not involved with the murders.

The jury convicted Hodge of all counts and sentenced him to death. The Supreme Court of Kentucky later vacated this conviction because the trial court had not conducted an individualized voir dire on the issue of pre-trial publicity.

The Commonwealth re-tried Hodge in 1996. Bartley refused to cooperate in the re-trial. After Bartley refused to testify, the judge declared Bartley unavailable and allowed the Commonwealth to read Bartley's previous testimony to the jury. Hodge's counsel objected on the ground that the previous testimony included a statement that Bartley had not received a deal whereas Bartley had since filed a verified statement in his own post-conviction action outlining a favorable agreement he had made with the Commonwealth in return for his testimony against Hodge.

In addition to the previous testimony of Bartley, the Commonwealth introduced the testimony of Hodge's ex-wife Sherry Hamilton. Hamilton related several instances in which Hodge allegedly told her that he committed the murders. Specifically, she testified that Hodge told her that he and Bartley entered the Morrises' home in order to rob them, that Mr. Morris went for a gun on the top of the refrigerator, and that Hodge and Mr. Morris got into a scuffle that ended with Hodge's shooting Mr. Morris. Thereafter, Bartley took Mrs. Morris into the bedroom and shot her. Hodge asked if Mrs. Morris was dead and, when Bartley said that he thought so, Hodge returned to the bedroom and shot Mrs. Morris again to make sure she was dead. Hamilton admitted that she had stated many times in the past that Hodge had not committed the murders. She also admitted to being an accomplished liar. She admitted to stealing from her employer, lying to the police, and participating in an immigration scam. She also admitted to bragging about her ability to lie effectively by mixing a bit of truth into a fabricated account. She asserted that although in the past, when she was romantically involved with Hodge, she had lied about Hodge's participation, she was now coming forward with the truth in the interest of justice.

The Commonwealth also presented testimony from the victim's son, Bobby Morris. Morris testified about his acquaintance with Roger Epperson in the months leading up to the murders, about his father's well-known practice of keeping large sums of cash in the house, about the layout of his parents' home, and about other matters that set the context for the crimes committed against his parents. In the course of his testimony, Morris described some

details of his father's appearance on the morning he was discovered dead. Although Morris's testimony was emotional at times, Hodge's counsel did not object to the testimony.

Several of the defense's witnesses and documents are also relevant to this appeal. The defense introduced the testimony of forensic serologist Ed Taylor, who testified that none of the biological evidence collected at the scene was ever linked to Hodge. Taylor testified on cross-examination that he did not have a hair or blood sample from Hodge with which to make comparisons. The defense also introduced the testimony of fingerprint expert Sara Skees, who testified that she analyzed twenty-two finger and palm prints lifted from the crime scene. She testified that multiple prints were linked to the Morrises and that others were never identified. None of the prints were linked to Hodge or his co-defendants. The defense also introduced the video deposition of Tammy Gentry, who testified that while she and Bartley were housed in the same prison facility, Bartley told her that Bartley killed the Morrises, that Hodge and Epperson were not involved, and that he was making a favorable plea bargain with the government. The defense also introduced a certified court document in which the Commonwealth Attorney recommended a favorable probation arrangement for Bartley on several burglary charges to which Bartley pled guilty. The stated reason for the recommendation of leniency was that Bartley significantly aided the Commonwealth in the solution of several crimes and the prosecution of the perpetrators.

The defense attempted unsuccessfully to introduce the testimony of Elizabeth Shaw, who served as defense counsel at Hodge's first trial. The trial court disallowed Shaw's testimony as double hearsay. Shaw then testified by avowal that Hamilton previously told her that Bartley had taken credit for both murders in the days immediately following the crimes. Additionally, the defense was unable to secure the testimony of Darcy O'Brien, an author who conducted extensive interviews with Hamilton while writing a book about another murder Hodge had committed. That murder, which occurred during the same crime spree as the Morris murders, was tried in separate proceedings and was not known to the jury until the penalty stage. At the penalty stage, the defense was unable to secure the testimony of Ann-Marie Charvat, a mitigation expert who prepared the penalty portion of the defense's case and who was unable to attend the trial because of a high-risk pregnancy. The defense nonetheless presented thirteen witnesses in mitigation, including several of Hodge's

immediate family members, his eighth grade teacher, and a judge who had dealt with complaints of sexual abuse at a juvenile institution where Hodge had been held as a teenager.

The jury ultimately convicted Hodge of first degree robbery, first degree burglary, and two counts of murder. The jury sentenced him to terms of imprisonment for the robbery and burglary offenses and to death for each count of murder. The Supreme Court of Kentucky affirmed Hodge's conviction and sentence on direct review. *Hodge v. Kentucky*, 17 S.W.3d 824 (Ky. 2000) [hereinafter *Hodge I*]. The United States Supreme Court denied certiorari. *Hodge v. Kentucky*, 531 U.S. 1018 (2003). Hodge pursued state collateral review under Kentucky Rule of Criminal Procedure 11.42. The state supreme court ultimately affirmed the denial of relief. *Hodge v. Kentucky*, 116 S.W.3d 463 (Ky. 2003), *overruled by Leonard v. Kentucky*, 279 S.W.3d 151, 159 (Ky. 2009) [hereinafter *Hodge II*]. Hodge again sought and was denied certiorari in the United States Supreme Court. *Hodge v. Kentucky*, 541 U.S. 911 (2004). Hodge then sought habeas relief in federal district court, asserting thirty-eight claims of error. The district court denied relief, but certified Hodge's claims of ineffective assistance of counsel for appeal. This court did not certify any additional issues.

Shortly before the oral argument in this case, Hodge filed a motion informing this court that he had recently learned the results of a DNA test conducted on a hair taken from Mrs. Morris's nightgown. According to the motion, Hodge's counsel recently contacted Ed Taylor, who is now retired from the state police crime lab. After speaking with Taylor and following up with the state crime lab, counsel learned that in 1998, several years after Hodge's conviction, the state collected blood samples from Hodge and his co-defendants as part of Epperson's prosecution. The results of the DNA test showed that the hair did not come from Hodge or either of his co-defendants. In conjunction with Epperson's state collateral attack on his sentence, the state court has ordered testing of other biological material found at the crime scene. Hodge recently obtained an order from the Laurel Circuit Court that allows Hodge's attorneys to get access to the forthcoming results. Hodge seeks to have his case stayed and held in abeyance, either in this court or in the district court, pending the outcome of the DNA testing and any state action taken in response to the results.

**II. Motion to Stay and Hold in Abeyance**

Hodge's motion to stay the proceedings and hold them in abeyance is denied. Several factors counsel against delaying resolution of this petition. First, we note that no DNA or biological evidence was used against Hodge at trial, nor can the tests now being conducted exonerate him. This is not a situation where, for instance, the prosecution established some weak genetic link, such as a blood-type match, which Hodge now seeks to disturb with more accurate testing. To the contrary, the jury knew that no DNA evidence linked Hodge to the scene. Further, the results of the new DNA testing cannot exclude Hodge from the crime scene. The items that will be tested are not the sort that must necessarily come from the perpetrator of the crime. The material to be tested here includes several hairs, items used to bind the victims, and blood swabs taken from one of the victim's hands. In a rape case where seminal fluid submitted for analysis must necessarily have come from the attacker, tests would be exonerating if they found no genetic match between the evidence and a sample from the accused. Here, however, the most the court could ascertain by waiting for the tests is that Hodge and his co-defendants were not the source of several hairs that did not necessarily come from the attackers and that Hodge and his co-defendants did not leave any biological residue on the items used to bind the Morrises (which is to be expected if the attackers wore gloves). The state-court order which gives Hodge access to the forthcoming test results also denied Hodge's motion to compare the results to the DNA of alternate suspects. The tests therefore cannot put Hodge in a fundamentally different situation than he was in at trial, when no DNA evidence linked him to the scene.

Second, the evidence underlying this motion has been available to Hodge for a number of years. Hodge was on notice that DNA tests were being conducted when state officials collected a blood sample from him in 1998. Moreover, the order requiring DNA testing is of record in Epperson's case. Hodge, who has been represented by counsel at every stage of direct and collateral review, should have been able to keep abreast of events occurring in his co-defendant's case. Federal law generally limits action taken based on newly discovered evidence to situations where the evidence could not have been discovered sooner through due diligence. *See United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991) (requirements for new trial); 28 U.S.C. § 2244(a)(2)(B)(i) (requirements for second or successive habeas petition).

Finally, the inability of DNA testing to exonerate Hodge and the fact that this evidence could have been discovered previously make it unlikely that the outcome of the tests will lead to any further state-court action for which this court should wait. Although a state court's decision to order further testing of evidence might appear to imply that the test results would give rise to additional state-court action, that is not necessarily the case here. The state court that issued the order allowing Hodge access to the forthcoming results stated explicitly that, because the testing had already been ordered in Epperson's case, the court declined to make any of the findings normally required to authorize DNA testing under Kentucky Revised Statute § 422.285. The court stated that for "a number of procedural and substantive reasons," including the fact that Hodge and Epperson were not convicted of identical crimes, "the reasoning applied . . . to Epperson may not also be applicable to Hodge, and as such this Court does not necessarily agree that in this case the petitioner has met his burden under KRS 422.285 for the authorization of DNA testing." However, given that the tests would be conducted regardless, the court decided to give Hodge's counsel the same access granted to Epperson's counsel.

The fact that Hodge has been allowed to piggyback on the testing ordered in Epperson's case does not necessarily mean that Hodge will be able to put the test results to the same use as Epperson will, because Hodge has already exhausted his state collateral remedies. Kentucky strictly limits collateral remedies, allowing petitioners each to submit a single petition under Kentucky Rule of Criminal Procedure 11.42, which "shall state all grounds for holding the sentence invalid of which the movant has knowledge." The rule goes on to specify that "[f]inal disposition of the motion shall conclude all issues that could reasonably have been presented in the same proceeding." Ky. RCr 11.42(3); *see also Crick v. Commonwealth*, 550 S.W.2d 534, 535 (Ky. 1977) ("This court has held upon numerous occasions that issues which could have been presented in an initial [Criminal Rule 11.42] motion to vacate cannot be raised by subsequent motions."). Once the single Rule 11.42 motion is exhausted, criminal defendants may still use Kentucky Rule of Civil Procedure 60.02 to raise issues that could not have been raised on direct review or through a Rule 11.42 motion. *Baze v. Kentucky*, 276 S.W.3d 761, 765 (Ky. 2008). But these petitions may only be brought to alert the court to errors in the judgment that "were not known or could not have been known by the party through the exercise of due diligence," and the mechanism

is not to be used "as another vehicle to revisit issues that should have been included or could have been included in prior requests." *Id.* at 766 (citations omited). While Epperson, in whose case the DNA tests were originally ordered, still has state remedies under Criminal Rule 11.42, that avenue is closed to Hodge.

The U.S. Supreme Court noted in *Rhines v. Weber*, 544 U.S. 269 (2005), that AEDPA's one-year statute of limitation for filing habeas petitions has dual purposes to promote finality and to encourage exhaustion of state remedies, which purposes would be undermined by the too frequent granting of motions to stay federal proceedings and hold them in abeyance while petitioners return to state court. *Id.* at 276-77. Federal courts should therefore use their power to stay cases and hold them in abeyance only in limited circumstances where the petitioner has shown good cause for his failure to exhaust state remedies. *Id.* at 277. Given the inability of the evidence in question to exonerate, the fact that the evidence could have been discovered sooner through due diligence, and the fact that the results are unlikely to lead to further state-court proceedings, we deny the motion to stay these proceedings and to hold them in abeyance or to remand to the district court for the same purpose.

### III. Habeas Corpus Claims

None of Hodge's claims of ineffective assistance of counsel entitle him to relief.

*A. Right to Testify*

Hodge's ineffective assistance of counsel claim regarding his right to testify fails both because it is procedurally defaulted and because it lacks merit. The Kentucky Supreme Court rejected this claim on the adequate and independent state ground that Hodge failed to comply with Kentucky's requirements for collateral review. Hodge's state collateral petition included a claim that trial counsel performed ineffectively by preventing Hodge from testifying despite Hodge's stated desire to do so. Hodge contended that, had he been allowed to testify, he would have fought harder for his life than his trial counsel fought. The Supreme Court of Kentucky held that Hodge failed to satisfy the specificity requirement of Criminal Rule 11.42(2), because he did not say to what facts he would have testified that were not already before the jury or how those facts would have influenced the jury's

decision. *Hodge II*, 116 S.W.3d at 470. The court also noted that the record contained no evidence to support Hodge's claim that trial counsel interfered with his right to testify and that unsupported, conclusory allegations could not justify an evidentiary hearing under Criminal Rule 11.42. *Id.* at 468.

Failure to comply with a well-established and generally enforced state rule constitutes procedural default and is an adequate and independent state ground for denying relief. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006). Criminal Rule 11.42(2) requires that a movant for collateral review "shall state specifically the grounds on which the sentence is being challenged *and the facts on which the movant relies in support of such grounds*" and further that "[f]ailure to comply with this section shall warrant a summary dismissal of the motion." (Emphasis supplied.) We have previously held, albeit in unpublished opinions, that Criminal Rule 11.42 is a regularly followed procedural rule that constitutes an adequate and independent ground for denying a claim. *E.g. Hardin v. Chandler*, 36 F. App'x 769, 771 (6th Cir. 2002). Therefore, Kentucky's determination that Hodge failed to properly plead his claim precludes review by this court absent a showing of cause for the default and resulting prejudice to the petitioner. *See Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005).

Hodge does not show cause and prejudice for his default. Hodge contends that his verified Rule 11.42 motion stating that he wanted to testify supplied the necessary basis for an evidentiary hearing, which hearing presumably would have established the facts necessary to support his claim. This argument is without merit. A defendant is presumed to have waived his right to testify unless the record contains evidence indicating otherwise. *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000). A contrary rule would require courts to hold an evidentiary hearing any time a defendant who did not testify at trial filed an after-the-fact statement saying that he wanted to testify but was prevented from doing so. Therefore the state court's refusal to hold an evidentiary hearing cannot supply cause for Hodge's failure to plead this claim properly. Hodge also does not demonstrate prejudice, because he does not show how his testimony would have altered the outcome of his case.

The outcome of our review would be the same in the absence of procedural default because Hodge fails to demonstrate either deficient performance by his attorney or resulting

prejudice to Hodge's defense. This is true whether we apply AEDPA deference or review de novo. Hodge does not point to anything in the record to support his claim that he wanted to testify or that trial counsel prevented him from doing so. The first prong of *Strickland* requires Hodge to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Rather than demonstrating that his trial counsel made serious errors, Hodge fails to show that counsel did *anything* improper respecting Hodge's right to testify. This court entertains a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client. *Webber*, 208 F.3d at 551 To overcome this presumption, Hodge would need to present record evidence that he somehow alerted the trial court to his desire to testify. *Id.* Hodge's present allegations that he wanted to testify and was prevented from doing so do not suffice to overcome the presumption that he assented to the tactical decision that he not testify.

Although the right to testify is a fundamental right subject only to knowing and intelligent waiver, "waiver of certain fundamental rights can be presumed from a defendant's conduct alone, absent circumstances giving rise to a contrary inference." *United State v. Stover*, 474 F.3d 904, 908 (6th Cir. 2007). Notably, Hodge has not stated that he was unaware of his right to testify or that he was somehow prevented from seeking the court's assistance in overcoming counsel's allegedly unilateral decision. We have previously stated that, "[a]lthough the ultimate decision whether to testify rests with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed." *Webber*, 208 F.3d at 551. Indeed, "[b]arring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record." *Id.* To the contrary:

> A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel. At base, a defendant must alert the trial court that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be

inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so.

*Id.* (internal citations and quotation marks omitted). As Hodge does not show that his right to testify was impaired, he cannot show deficient performance by counsel.

Hodge also fails to demonstrate prejudice. In his state-court post-conviction petition and in his brief to this court, Hodge gives no details about the substance of his testimony but speculates that it would have had an impact on the jury's view of Bartley's and Hamilton's credibility and of Hodge's involvement with the Morris murders. The second prong of *Strickland* requires Hodge to establish that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The defendant must "affirmatively prove prejudice." *Id.* at 693. Hodge's speculation that his testimony would have left a favorable impression with the jury does not demonstrate the required prejudice under *Strickland*. *See Clark v. Waller*, 490 F.3d 551, 558 (6th Cir. 2007) (holding that a petitioner failed to demonstrate prejudice by asserting that an uncalled witness would have aided his defense).

*B. Cross-Examination of Sherry Hamilton*

Applying a modified level of deference to the state-court decision, we deny relief on Hodge's claim that his attorney rendered ineffective assistance in his cross-examination of Sherry Hamilton. Hodge claims that his attorney's cross-examination of Hamilton, who is Hodge's ex-wife, led to several damning statements that the prosecutor used against Hodge in closing argument. The state court addressed this argument as follows:

> Hodge contends that defense counsel was deficient in the investigation and cross-examination of his former wife. The issue on direct appeal was the admission of KRE 404(b) evidence. We held that counsel's continued cross-examination of an obviously hostile witness was a tactical decision. Trial strategy will not be second guessed in [a Criminal Rule] 11.42 proceeding.

*Hodge II*, 116 S.W.3d at 473 (citations omitted).

When reviewing a habeas petition from a state prisoner, federal courts give substantial deference to the legal determinations of the state court. Where the state court addressed the petitioner's federal claims on the merits, this court will only grant relief if the

state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  The state court did not apply a procedural bar here, as it did to Hodge's right-to-testify claim; but neither did the  court conduct a full *Strickland* analysis. Because the state court did not articulate reasons for its decision, we conduct an independent review of Hodge's claim; but we give deference to the state court's final outcome unless our independent analysis shows that the state decision was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *See Williams v. Anderson*, 460 F.3d 789, 796 (6th Cir. 2006).

Although the cross-examination of Hamilton revealed several pieces of evidence that the prosecution later used against Hodge, Hodge does not show that his counsel's trial strategy was so deficient that the Kentucky court violated *Strickland* when it declined to grant relief.  Hodge's claim about his counsel's conduct of the cross-examination resolves into two sub-claims: first, that counsel elicited damaging, inadmissible evidence and, second, that counsel failed to move contemporaneously to strike the evidence.  Hamilton referred to Hodge's previous trial, expressed her belief that he would kill again, described Hodge as being "on the run" from police, and noted Hodge's use of cocaine and marijuana.  Counsel did not object to any of these references, but moved for a mistrial at the end of the testimony. In response to the judge's denial, counsel explained that he did not request admonishments during the testimony for fear of drawing the jury's attention to the damaging evidence.  This court previously found a similar explanation to be reasonable. *See Cobb v. Perini*, 832 F.2d 342, 347-48 (6th Cir. 1987).  In *Cobb*, we held that an attorney's failure to object to testimony about a defendant's confrontation with a police officer during a court recess did not constitute ineffective assistance of counsel because the decision not to object was strategic and it was not at all clear that an objection would have been effective. *Id.*  The attorney in that case decided not to object because "once the question was out, [he] decided it would do more harm to object than to trivialize it." *Id.* at 348 (alteration in original).

With regard to counsel's drawing out the damaging information in the first place, the record indicates that many of Hamilton's damaging statements were nonresponsive answers to legitimate questions.  For instance, Hamilton's assertion that Hodge would kill again came after counsel asked whether she remembered telling various newspapers that Hodge was not

involved in the Morris murders. Hamilton referred to the previous trial in her answers to a line of questions in which counsel tried to establish that Hamilton changed her story—which had originally been that Hodge was not involved in the murders—as a result of romantic jealousy stemming from Hodge's remarriage. During this line of questioning, Hamilton testified that she had learned prior to testifying that Hodge had become engaged and later remarried, that she suffered "extreme" jealousy regarding Hodge with other women, and that she had once pointed a gun at Hodge and another woman and threatened to shoot them. Regardless of whether this testimony damaged or helped Hodge's case in the eyes of the jury, counsel's questions were objectively reasonable.

Counsel's questions regarding Hamilton's immigration scam marriage to Mr. Wong were also objectively reasonable. Although Hamilton implicated Hodge by stating that she lived with Hodge during her marriage to Mr. Wong and that Mr. Wong paid Hodge and Hamilton's utilities, rent, cable, car insurance and phone bill in addition to buying Hodge and Hamilton a car and paying them $10,000, questions about the marriage were part of a broader line of questioning attempting to portray Hamilton as a life-long scam artist with little integrity. Just prior to Hamilton's testimony about her marriage to Mr. Wong, counsel asked Hamilton about various crimes and frauds she had committed prior to her relationship with Hodge. Immediately following Hamilton's testimony about her marriage to Mr. Wong, Hamilton testified that she lived a life of crime, considered herself a good liar, and stated that when she "could outsmart a police officer, it was a thrill." Although questions about incidents that occurred during Hamilton's relationship with Hodge were likely to implicate past crimes committed by Hodge, given the importance of Hamilton's credibility as a witness for the prosecution it was objectively reasonable to pursue this line of questioning.

The wisdom of counsel's strategy must be judged based on the circumstances as a whole as they stood at the time counsel made his decisions. *Strickland* instructs that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Given Hamilton's extremely damaging testimony on direct examination, counsel was faced with the need to discredit her through impeachment, despite the fact that doing so would give her the opportunity to make additional damaging statements in the

presence of the jury. Once the damaging statements had been made, counsel had to decide quickly whether seeking judicial intervention would aid or harm his client's cause. As *Strickland* states, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Where the defendant fails to overcome the presumption that the challenged action "might be considered sound trial strategy," we will not find ineffective assistance. *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91,101 (1955)).

Hodge also contends that his attorney did not adequately investigate Hamilton in preparation for the examination. While it is clear from the record that the attorney who cross-examined Hamilton had not spoken to her previously, it is also clear from the questions asked of Hamilton and from other motions presented to the trial court that Hodge's counsel investigated Hamilton's personal, medical, and criminal histories extensively in preparation for trial.

The question before us is not whether counsel's performance fell short under *Strickland*, but rather whether Kentucky's determination that counsel's actions did not constitute ineffective assistance is contrary to, or an unreasonable application of, clearly established Supreme Court precedent. The record does not support such a conclusion.

*C. Other Issues*

Hodge raises a number of other claims that the state court has not directly addressed. Hodge raised these claims on state post-conviction review, but the Supreme Court of Kentucky relied upon its previous resolution of the same or related claims on direct review. Generally a procedural bar, if an adequate and independent state ground, precludes federal review of the petitioner's claim. *See Biros*, 422 F.3d at 386-87. However, in determining whether to give preclusive effect to a procedural default, this court must consider whether the petitioner actually failed to comply with a state procedural rule. *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). For these claims, we cannot identify a state procedural rule that Hodge failed to follow that would preclude review in this court.

Until recently, Kentucky followed a practice with regard to ineffective assistance of counsel claims that did not constitute either treatment of the claims on the merits or a

procedural bar necessarily entitled to federal deference. According to Kentucky precedent as it stood when Hodge's case was on state collateral review, "[a]n issue raised and rejected on direct appeal may not be relitigated in [collateral] proceedings by claiming that it amounts to ineffective assistance of counsel." *Sanborn v. Commonwealth*, 975 S.W.2d 905, 909 (Ky. 1998), *overruled by Leonard v. Kentucky*, 279 S.W.3d 151, 159 (Ky. 2009). The Kentucky Supreme Court used this principle to reject a number of the ineffective assistance of counsel claims raised in Hodge's Criminal Rule 11.42 motion. *See Hodge II*, 116 S.W.3d at 473. Ineffective assistance of counsel claims in Kentucky are appropriately raised for the first time on collateral review, rather than on direct review. *See Humphrey v. Kentucky*, 962 S.W.2d 870, 872 (Ky. 1998). The result of Kentucky's practice is that several ineffective assistance claims that Hodge preserved by properly raising them on collateral review appear never to have been treated on the merits. *See Leonard*, 279 S.W.3d at 157-59 (appearing to read *Hodge II* as failing to consider ineffective assistance of counsel claims appropriately raised for the first time on collateral review). Where a state bars collateral review of a claim actually preserved by the petitioner, such bar will not constitute procedural default on federal review.

However, not every ineffective assistance of counsel claim that the Kentucky Supreme Court declined to address on the merits in this case warrants de novo review. In some instances, the ineffective assistance of counsel claim relies on proof of an element already resolved on direct review. In such instances, the Kentucky Supreme Court's refusal to hear the ineffective assistance claim was a straightforward application of collateral estoppel. Where the Supreme Court of Kentucky declined to consider an ineffective assistance claim because it had already resolved on direct review an issue necessary to the claim, we defer to the state court's earlier resolution of the underlying issue unless the ultimate result is contrary to, or an unreasonable application of, clearly established federal law. Out of an abundance of caution, however, we alternatively apply de novo review as well with respect to these instances. The Supreme Court in *Knowles v. Mirzayance*, 129 S.Ct. 1411 (2009), a recent habeas claim involving alleged ineffective assistance of counsel, similarly applied a de novo scope of review as an alternative basis for its ruling that habeas was not warranted. *See id.* at 1420-22. In other instances, because the ineffective assistance claim appears distinct from the claim addressed on direct review, the Kentucky Supreme

Court appears never to have addressed properly preserved ineffective assistance of counsel claims on the merits; we review those claims de novo.[1]

### 1. Failure to obtain admission of evidence

Hodge faults his attorney for failing to obtain admission of several pieces of testimony or evidence, but none of these alleged failures constitutes ineffective assistance of counsel.

Counsel's failure to convince the trial court to overrule the prosecution's objection to Elizabeth Shaw's testimony does not constitute ineffective assistance. In an effort to impeach Sherry Hamilton, defense counsel at Hodge's second trial sought to introduce the testimony of Shaw, who was Hodge's original trial counsel. Shaw had conducted interviews with Hamilton in preparation for the first trial. Shaw's testimony would have been that Hamilton's account to Shaw of what Bartley said about the crime differed from Hamilton's present account to the jury. On the prosecution's objection, the trial court labeled Shaw's testimony as double hearsay. The Supreme Court of Kentucky held on direct review that Shaw's testimony was not admissible. *Hodge I*, 17 S.W.3d at 849.

Hodge cannot establish that his counsel was ineffective for failing to gain admission of Shaw's testimony without first establishing that Shaw's testimony was admissible. The Supreme Court of Kentucky declined to consider Hodge's ineffective assistance of counsel claim on collateral review because the underlying issue of the evidence's admissibility had already been resolved against Hodge on direct review. *Hodge II*, 116 S.W.3d at 473. The state court's holding on direct review necessarily precluded Hodge from succeeding on his ineffective assistance claim on collateral

---

[1]Kentucky has since modified the way that it applies a procedural bar to ineffective assistance of counsel claims that are based on claims of error denied on direct appeal. *See Leonard*, 279 S.W.3d at 157-59. The *Leonard* court held, "While such an ineffective-assistance claim is certainly related to the direct error, it simply is not the same claim. And because it is not the same claim, the appellate resolution of an alleged direct error cannot serve as a procedural bar to a related claim of ineffective assistance of counsel." *Id.* at 158. *Leonard* appears to overrule *Hodge II* to the extent that *Hodge II* applied the previous procedural bar requirements. *Id.* at 159. However, the holding of *Leonard* in this regard does not apply retroactively, and it therefore appears that Hodge's conviction cannot now be challenged in state court on the basis of *Leonard. Id.* at 162.

review.  The ultimate outcome of the state-court process—which was a determination that Shaw's testimony was inadmissible and that Hodge's counsel was therefore not ineffective for failing to gain its admission—is not contrary to, or an unreasonable application of, clearly established federal law.  Hodge is therefore not entitled to relief.

This claim also fails on de novo review.  After the trial court sustained the prosecution's objection to Shaw's testimony, Hodge's counsel requested a bench conference and argued multiple hearsay exceptions in an effort to persuade the court to admit the testimony.  When the court rejected these attempts, counsel sought to pursue the testimony by avowal, which had the effect of preserving a record of what the testimony would have been on the chance that a later court would reverse the ruling.  The standard set forward in *Strickland* is one of "reasonably effective assistance."  466 U.S. at 687.  Counsel does not fall below this standard by failing to prevail when arguing a debatable point to the court.  In response to the court's unfavorable ruling, counsel approached the bench and made arguments.  When those arguments proved unsuccessful, counsel acted not only to preserve the error for later review but also to make a record of the testimony in the event that review yielded a favorable ruling.  Hodge's counsel did not cease to function as the "counsel" guaranteed by the Sixth Amendment by failing to obtain admission of Shaw's testimony.  *See id.*

Hodge's contention that his counsel performed ineffectively by failing to obtain admission of Hamilton's psychiatric records suffers from the same flaw.  The Supreme Court of Kentucky held on direct review that Hamilton's psychiatric records were irrelevant and inadmissible under the state's psychotherapist-patient privilege.  *Hodge I*, 17 S.W.3d at 843-44.  Hodge could not establish his ineffective assistance claim without proving an issue the state had already resolved against him.  The state-court determination that Hodge did not suffer ineffective assistance of counsel is entitled to deference.

This claim also fails on de novo review.  Counsel is not ineffective merely for failing to obtain a desired ruling from the court.  Hodge argues that Hamilton's psychiatric records revealed her true reasons for testifying against him.  The trial judge

reviewed Hamilton's records in camera and determined that they contained nothing sufficiently relevant to justify breaching the state's psychotherapist-patient privilege, a holding which the Kentucky Supreme Court affirmed. *See Hodge I*, 17 S.W.3d at 844. Hodge's counsel was not ineffective for failing to persuade the trial court to admit evidence that was privileged and not sufficiently relevant.

Hodge also does not qualify for relief on the claim stemming from his attorney's failure to get a document admitted that would have been used to impeach Bartley. Shortly before Hodge's retrial in the Morris murders, Bartley filed a motion for state collateral review in a case stemming from the murder of Tammy Acker and the attempted murder of Dr. Roscoe Acker. Hodge, Epperson, and Bartley committed these crimes shortly after the Morris murders. In that Criminal Rule 11.42 motion, which was filed in the Acker murder case and which referred only to the charges in that case, Bartley argued that the Commonwealth had reneged on a deal it made with him to secure his testimony against Hodge and Epperson. Hodge's counsel argued strenuously and competently for the document's admission at Hodge's trial. The court nonetheless issued an unfavorable ruling, finding the document both irrelevant and unreliable.

In this instance, we do not defer to the outcome of the state-court process. On direct review, the Supreme Court of Kentucky held that the trial court did not abuse its discretion by overruling the motion to introduce the contested document. *Hodge I*, 17 S.W.3d at 843. Because the state court held only that the trial court did not abuse its discretion in keeping the document out, Hodge was not collaterally estopped from demonstrating that the document was admissible—and then from arguing that his attorney was ineffective for failing to gain its admission. In this instance, the underlying issue resolved on direct review is distinct from the ineffective assistance claim properly raised for the first time on collateral review. Yet the Kentucky Supreme Court declined on collateral review to consider the merits of Hodge's ineffective assistance of counsel claim, saying that it had already resolved the issue on direct review. *Hodge II*, 116 S.W.3d at 473.

Applying de novo review, we do not find that counsel's performance fell below the standard set forward in *Strickland* merely because counsel was unable to persuade the trial court to rule in Hodge's favor.  In any event Hodge was not prejudiced. Hodge's counsel successfully moved the trial court to admit the Commonwealth's joint motion with Bartley for a favorable probation arrangement in the Morris murder case. Hodge's counsel also presented the testimony of Tammy Gentry, who testified that Bartley told her he had committed the murders but was going to get a plea bargain that would result in early parole.  If Hodge was  prejudiced at all by the absence of Bartley's Rule 11.42 motion, it was not the level of prejudice necessary to qualify for relief under *Strickland*, which requires the defendant to establish "a reasonable probability that, but for counsel's [allegedly] unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

### 2. Failure to secure testimony

Hodge faults his attorney for failing to secure the testimony of two witnesses—one whose testimony would have been offered to impeach Hamilton at the guilt phase and one whose testimony would have been offered in mitigation at the penalty phase—but the record does not show that counsel's efforts to secure these witnesses fell below the constitutional requirement.  And in any event Hodge was not prejudiced by the witnesses' absence.

Trial counsel was not able to secure the testimony of Darcy O'Brien, the author of *A Dark and Bloody Ground*.  O'Brien's book chronicled the robbery and murder of Tammy Acker and attempted murder of Acker's father, crimes for which Hodge had been tried, convicted, and sentenced to death.  O'Brien had interviewed Hamilton about the Acker murder, and Hodge now argues that O'Brien could have provided information to impeach Hamilton's testimony. The record suggests that trial counsel knew of O'Brien's potential importance and endeavored to secure his testimony for Hodge's trial. Indeed, Hodge's counsel secured permission to take O'Brien's deposition and funds to pay for his travel.  When O'Brien indicated that he would be out of the country during

the date scheduled for the deposition, trial counsel moved for a continuance. The trial court rejected the motion.

On direct review, the Supreme Court of Kentucky determined that Hodge suffered no prejudice from O'Brien's absence. *Hodge I*, 17 S.W.3d at 850–51. Hodge could not make out a claim for ineffective assistance without establishing prejudice, and the state court's finding on direct review precluded him from making that showing. The state-court determination—that Hodge suffered no prejudice and therefore could not establish ineffective assistance of counsel—is not contrary to, or an unreasonable application of, clearly established federal law.

Hodge's claim also fails de novo review. Hodge does not establish that counsel's performance fell below the standard of reasonableness or that Hodge suffered prejudice. This case differs significantly from those which Hodge cites, because trial counsel in this case undertook an investigation of the witness and sought to secure his testimony. In *Towns v. Smith*, 395 F.3d 251 (6th Cir. 2005), by contrast, trial counsel did not even contact an important witness who was willing to testify that the defendant did not participate in the crime. *Id.* at 259-60. In *Clinkscale v. Carter*, 375 F.3d 430 (6th Cir. 2004), trial counsel's failure to file a timely alibi notice precluded the testimony of multiple alibi witnesses who would otherwise have been available to testify on the defendant's behalf. *Id.* at 443. Unlike the attorney actions in *Smith* and *Clinkscale*, the efforts of Hodge's counsel, although unsuccessful, were not professionally unreasonable.

Hodge also does not establish prejudice similar to that which occurred in the cases he cites. In *Smith*, trial counsel's actions caused the absence of a witness who would have testified that the defendant was not involved in the crimes charged. 395 F.3d at 260. In *Clinkscale*, counsel's failure caused the absence of alibi witnesses. 375 F.3d at 443. O'Brien's testimony was sought in Hodge's case for the purposes of impeachment, and the record shows that Hodge's counsel used other means to impeach Hamilton in the absence of O'Brien's testimony. In response to cross-examination, Hamilton admitted to the impeaching facts—regarding her previous contradictory

statements about Hodge's guilt and her general penchant for deceit—which the defense would have otherwise sought to prove through O'Brien's testimony.

Similarly, Hodge is not entitled to relief on his claim that trial counsel was unable to secure the testimony of mitigation expert Ann-Marie Charvat. Hodge's counsel hired Charvat to coordinate the mitigation phase of a trial originally scheduled for March 18, 1996. The trial was postponed on two occasions and was finally scheduled to begin on October 21, the very day on which Charvat expected to give birth. When counsel learned that Charvat's pregnancy was high-risk and that she would likely be unable to travel in the weeks immediately preceding and following childbirth, they made various unsuccessful attempts to postpone the trial.

The Kentucky Supreme Court held on direct review that the trial court did not abuse its discretion by declining to continue the trial. *Hodge I*, 17 S.W.3d at 851. This finding did not preclude Hodge from arguing on collateral review that his counsel could have taken other steps to secure Charvat's testimony. Indeed, the Kentucky Supreme Court mentioned as part of its holding on direct review that Hodge (presumably through counsel) did not offer to read Charvat's affidavit in lieu of her live testimony. *Id.*

Nonetheless, Hodge's claim fails de novo review. We cannot say that counsel's efforts in this area fell below the requirements set forth in cases dealing with ineffective assistance of counsel at the penalty phase or that Hodge was prejudiced. The record indicates that, in addition to extending considerable efforts to secure Charvat's participation, counsel presented substantial other evidence in mitigation. Although counsel who fails to prepare and present mitigating evidence may be found ineffective, no such failure occurred here. Despite the fact that Charvat was not present at trial, she conducted substantial investigation and strategic preparation for the mitigation phase beforehand. Hodge's counsel presented thirteen mitigation witnesses who testified about Hodge's troubled past, including the way family members and the penal system unjustly harmed him.

Hodge's situation is very different from those in which courts have previously found ineffective assistance of counsel at sentencing. We have recognized that

"counsel's failure to make a reasonable investigation of a defendant's psychiatric history and family background, and to present mitigating evidence to the jury at sentencing, can constitute ineffective assistance." *Clark v. Mitchell*, 425 F.3d 270, 284 (6th Cir. 2005) (citing *Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003)). In *Wiggins*, the Supreme Court relied on counsel's failure to uncover and present voluminous mitigating evidence, such as evidence that during childhood the defendant suffered severe privation, physical torment, and repeated sexual molestation. 539 U.S. at 535. There is no allegation here that Hodge's counsel failed to uncover or present any significant mitigating aspect of Hodge's situation or history. In *Poindexter v. Mitchell*, 454 F.3d 564 (6th Cir. 2006), counsel did not request medical, educational, or governmental records; did not consult with a mental health professional despite noticeable signs of defendant's mental illness; and did not consult a mitigation specialist who could have reconstructed the defendant's social history. *Id.* at 578-79. Here, by contrast, counsel made investigations with the help of a mitigation specialist and presented evidence about Hodge's family background, educational experience, and history with the correctional system.

Moreover, Hodge does not demonstrate prejudice. The substantial preparations made and evidence presented by Hodge's counsel, in addition to showing that counsel did not perform deficiently, make it unlikely that Hodge suffered prejudice from Charvat's absence. Additionally, Hodge's argument that Charvat could have presented a fuller, more cohesive account leading to a more favorable outcome basically ignores the strong aggravating evidence presented against him. The state presented only one penalty-phase witness, the custodian of Hodge's criminal records. She presented evidence of Hodge's previous criminal convictions, including his conviction and death sentence for capital murder. The jury found seven aggravating factors, when only one was necessary to impose the death penalty. Given the substantial evidence already presented in mitigation and the strength of the aggravating factors, it is unlikely that more mitigating evidence along the same lines would have caused the jury to strike a different balance. Prejudice is established in a capital case if there is a reasonable probability that, but for counsel's omissions, at least one juror would not have

recommended the death penalty. *See Wiggins*, 539 U.S. at 536-37; *accord Poindexter*, 454 F.3d at 580. There is no such probability here.

### 3. Failure to object

Hodge raises several claims that his attorney failed to object to harmful evidence or prosecutorial argument, but none of these claims entitles Hodge to relief. Because the Kentucky Supreme Court determined on direct review that the evidence and arguments were not objectionable, we defer to the state-court's finding that Hodge did not suffer from ineffective assistance of counsel. Moreover, Hodge does not establish for purposes of de novo review that these omissions to object constituted unreasonable trial strategy or that he was prejudiced by counsel's actions. Because of the "numerous potentially objectionable events" that occur throughout trial, we have previously noted that "any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial to a client that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice." *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006). None of the omissions claimed by Hodge rises to the level described in *Lundgren*, nor do they qualify when considered together as a whole.

Hodge is not entitled to relief based on counsel's decision not to object to the emotional testimony of the victims' son. Bobby Morris testified to a number of relevant facts that set the scene for his parents' murders. He testified that although his parents were not rich, they had accumulated some money and items of value. He also testified that his father's practice of keeping large sums of cash in the house was so well-known in the community that people would stop by to cash checks when the bank was closed. Morris testified about his father's close acquaintance with members of the Epperson family and about having seen Roger Epperson and Hodge together in the weeks leading up to the murders. Morris's testimony about the layout of his parents' home, their living practices, and items they kept in the house established the context for understanding what happened on the night of the murders.

The Kentucky Supreme Court held on direct review that Morris's testimony did not constitute impermissible "glorification" of the victims and that, in any case, the testimony did not prejudice Hodge. *Hodge I*, 17 S.W.3d at 847. Hodge was therefore precluded from establishing two of the elements necessary for a successful collateral attack based on ineffective assistance of counsel. The state-court's decision not to grant Hodge relief is entitled to deference, because it is not contrary to, or an unreasonable application of, clearly established federal law.

Hodge also is not entitled to relief on de novo review, because Hodge's counsel did not act unreasonably by not objecting to Morris's testimony. Although Morris was visibly upset while on the stand, his testimony was not irrelevant or otherwise objectionable. Kentucky law provides that even when testimony about the victims strays beyond information strictly relevant to the crimes at hand, such evidence does not prejudice the defendant or inflame the jury so long as the victim is not glorified or enlarged. *Bowling v. Commonwealth*, 942 S.W.2d 293, 302-03 (Ky. 1997). Morris's testimony, although emotional, did not serve to glorify his parents, nor did it stray far from matters directly relevant to the crimes committed against them. Counsel did not act unreasonably by not objecting.

Counsel's decision not to object to prosecutorial arguments about the lack of forensic evidence also does not entitle Hodge to relief. One of the main defense strategies in this case was to point out that Hodge had not been linked to the scene by either fingerprint or DNA evidence. In its cross-examination of the defense's fingerprint specialist, the prosecution attempted to establish that crime scenes often produce no fingerprint evidence linking the perpetrator to the scene. When the prosecutor asked whether it would be possible for a defendant to obscure his fingerprints by using sandpaper on his fingers, the witness indicated that temporarily obscuring fingerprints with sandpaper was a possible but extremely painful and unlikely scenario. Defense counsel did not object to the question.

Hodge raised this claim on collateral review, but the Supreme Court of Kentucky did not address it directly. The court merely referred to "numerous alleged separate

instances of ineffective assistance of counsel" that were not proper subjects of collateral review because they were, or could have been, raised on direct appeal. *Hodge II*, 116 S.W.3d at 473. The state court did not make any findings on direct review that would preclude Hodge from bringing this ineffective assistance of counsel claim on state collateral review. Because Hodge properly raised the claim on collateral review and the state court did not make any factual findings or legal conclusions to which we could defer, we review this claim de novo.

Assuming that the prosecutor's question was objectionable, any failure on defense counsel's part did not lead to the required level of prejudice. Because the decision whether to object in a particular instance is made in the strategic context of an entire trial, any single failure to object does not constitute error unless the information introduced "is so prejudicial to a client that failure to object essentially defaults the case to the state." *Lundgren*, 440 F.3d at 774. The testimony in this case indicated that the defendants wore gloves while committing the crimes, and failing to object to a single reference to other, unlikely, means of obscuring fingerprints did not default the case to the state.

Counsel's decision not to object to prosecutorial argument about the lack of DNA evidence also provides no basis for relief. The Kentucky Supreme Court concluded on direct review that the prosecutor's closing argument was completely proper. *Hodge I*, 17 S.W.3d at 854. On collateral review, the Kentucky Supreme Court rejected Hodge's ineffective assistance claim because the court had already resolved the underlying issue against Hodge. *Hodge II*, 116 S.W.3d at 473. The court's determination on direct review that the prosecutor committed no impropriety precluded Hodge from establishing a necessary element of his ineffective assistance claim. The state court's determination that Hodge could not make out a claim of ineffective assistance of counsel was not contrary to, or an unreasonable application of clearly established federal law. We therefore defer to the state court's decision.

In any event, this claim is meritless under de novo review, because Hodge does not establish the necessary prejudice under *Strickland*. The prosecution made the point,

both in its examination of the defense's DNA expert and in closing argument, that any lack of a DNA match could be attributed to the fact that the state did not have a blood or hair sample from Hodge with which to compare the blood and hair found at the scene. Hodge has not explained how objection by counsel could have mitigated the unfavorable implications of this undisputed fact. Hodge argues, without citing any evidence, that he wanted DNA testing at the time of trial and that the prosecution's argument unfairly implied the opposite. This after-the-fact assertion by Hodge has no relevance to his counsel's actions at the time of trial or to any prejudice Hodge may have experienced as a result.

Hodge is not entitled to relief based on his claim that counsel failed to object to a prosecutorial argument at the penalty phase that portrayed the abuse Hodge experienced growing up as mere discipline that could not excuse later acts of murder. The Kentucky Supreme Court held on direct review that the prosecutor's comment was fair and permissible. *Hodge I*, 17 S.W.3d at 853. As already discussed, Hodge could not make out his ineffective assistance of counsel claim on collateral review without first establishing that the prosecutor's argument was objectionable, and the state court's decision denying relief is entitled to deference.

This claim also fails under de novo review, because Hodge does not show that counsel acted unreasonably by not objecting to the prosecutor's statements. Counsel objected numerous times throughout the prosecution's argument and was overruled every time. At one point, the court told counsel to stop objecting. At the end of the prosecution's argument, counsel moved for a mistrial both because of various statements by the prosecutor and because of remarks the court made to defense counsel in response to objections. The court overruled the motion and reiterated that nothing objectionable occurred during the argument. "[R]econstruct[ing] the circumstances of counsel's challenged conduct," and "evaluat[ing] the conduct from counsel's perspective at the time," we cannot say that counsel's decision not to make even more objections than those he made constituted unreasonable trial strategy. *Strickland*, 466 U.S. at 689.

Hodge also claims, citing a particular page in the trial transcript, that the prosecutor improperly shifted the burden of proof to Hodge during the penalty phase and that defense counsel failed to object. After a thorough review of the prosecution's argument, this court is unable to find any statement resembling the one Hodge recounts, but instead finds several places where the prosecution discussed the burden of proof borne by the prosecution.

### 4. Failure to investigate other individuals

Hodge's claim that counsel rendered ineffective assistance by failing to make further investigation of a potential alternative suspect has no basis in the record. Former Kentucky State Police Detective Ronnie Gay testified at trial that he pursued this lead, concerning Odie Crow, until it proved to be a dead end. Although the Kentucky Supreme Court did not directly address this claim, it flatly fails de novo review. Hodge does not show that trial counsel's decision not to pursue an independent investigation of Crow was unreasonable or that not pursuing such an investigation caused Hodge any prejudice.

### 5. Failure to preserve record of Brady *violations*

Finally, Hodge is not entitled to relief based on his claim that trial counsel failed to preserve and exploit a potential *Brady* violation. This claim is based on testimony from Detective Gay that he deleted the names of confidential witnesses who did not produce any useful information and that he had several casual conversations with co-defendant Bartley that he did not record. The Supreme Court of Kentucky considered on direct review whether the prosecution committed a discovery violation with regard to this information. Although the Kentucky Supreme Court found that the prosecution had violated the discovery order,[2] it upheld the trial court's decision not to dismiss the indictment under an abuse-of-discretion standard. *Hodge I*, 17 S.W.3d at 849-50. This holding—that the trial court did not abuse its discretion—arguably did not preclude

---

[2]The court noted that while the discovery order in question exceeded the trial court's authority, the order was valid and binding on the prosecution until overruled. *Hodge I*, 17 S.W.3d at 849.

Hodge's ineffective assistance of counsel claim on collateral review; however the Kentucky Supreme Court did not address Hodge's claim on the merits during collateral review. Nonetheless, this claim fails under de novo review. The record indicates that counsel adequately pursued and preserved a record of any alleged violation by Gay. Prior to trial, defense counsel moved for production of the omitted material and obtained a ruling that the state should produce the material to the extent possible. Counsel also questioned Gay at trial about the deleted material and omitted conversations. Hodge's vague suggestion that counsel should have further "investigate[d]" and "ensure[d] the record was complete" does not establish what additional steps counsel should have taken or how Hodge was prejudiced by counsel's failure to take them. Mere speculation that additional investigation would have uncovered wrongfully withheld exculpatory evidence does not establish either that counsel acted unreasonably or that Hodge was prejudiced.

**Conclusion**

For the foregoing reasons, we deny the motion to stay these proceedings and affirm the judgment of the district court.

———————————

**DISSENT**

———————————

BOYCE F. MARTIN, JR., Circuit Judge, dissenting. Benny Lee Hodge was convicted by a jury in Kentucky state court of first-degree robbery, first-degree burglary, and two counts of murder, and was sentenced to death. I dissent because I believe that the state courts unreasonably rejected his ineffective assistance of counsel claim. Hodge's counsel's cross-examination of the state's key witness, his ex-wife Sherry Hamilton, was a disaster, and his lawyer also failed to object to any of the incriminating—and inadmissible—answers that he had elicited from her. Altogether, Hodge's counsel's performance fell below the minimum constitutional standards of professional competence, *Strickland v. Washington*, 466 U.S. 668 (1984), and the state courts' determination otherwise was unreasonable, 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 405 (2000). I respectfully dissent.

I.

Edwin and Bessie Morris, an elderly couple, were murdered in their home in Jackson County, Kentucky in 1986, during a robbery. The murderers took over $35,000. Petitioner Benny Lee Hodge and his co-defendants, Donald Bartley and Roger Epperson, were charged and convicted in separate trials. A jury first found Hodge guilty in 1987, but the Kentucky Supreme Court vacated that decision because the trial court had not properly conducted individual *voir dire* on the issue of pretrial publicity. Hodge was retried in 1996 in Laurel County, Kentucky, was found guilty on all counts, and was sentenced to death.

The record is voluminous, but Kentucky and the majority concede that the state presented no direct physical evidence linking Hodge to the murders. Its case consisted of the testimony of two witnesses, Bartley, Hodge's co-defendant, and Sherry Hamilton, his ex-wife. Bartley did not testify in person at Hodge's second trial, however, because he asserted his Fifth Amendment right against self-incrimination. Instead, the jury was read a redacted transcript of his testimony from Hodge's 1987 trial, with all references

to the previous trial omitted. Hamilton was thus the government's lone primary witness who testified in person. Hamilton and Bartley both identified Hodge as one of the killers, though they differed on other details, including who had accompanied Hodge into the Morrises' home to kill them (Hamilton said Bartley went in; Bartley said it was Epperson). Hamilton's testimony was based on her having allegedly witnessed Hodge's and Bartley's reactions to seeing reports of the murders on television.

During deliberations, several jurors requested to hear certain testimony again; they reheard portions of the testimony of Bartley and Hamilton, as well as one of Hodge's witnesses, Tammy Gentry. At one point, the jury indicated that it was deadlocked, but later returned a verdict finding Hodge guilty on all counts.

## II.

A brief digression before turning to Hodge's ineffective assistance of counsel claim. Though I agree with my colleagues' conclusion that Hodge's right to testify claim was procedurally defaulted and, alternatively, fails on the merits, I must point out a possible confusion of the law. The majority correctly recognizes that "[t]he right of a defendant to testify at trial is a constitutional right of fundamental dimension and is subject only to a knowing and voluntary waiver by the defendant." *United States v. Webber*, 208 F.3d 545, 550 (6th Cir. 2000) (citing *Rock v. Arkansas*, 483 U.S. 44, 52, 53 n.10 (1987)). Such waivers may be upheld where "[t]here is no evidence in the record that Defendant attempted to communicate with and 'alert the trial court' to a disagreement with defense counsel regarding whether Defendant should take the stand." *Webber*, 208 F.3d at 552. But an attempt to "alert" the court need not, as the majority intimates, involve a dramatic outburst like, "I am being denied my right to testify!" *See United States v. Ortiz*, 82 F.3d 1066, 1071 (D.C. Cir. 1996) (observing "the impracticability of placing a burden on a defendant to assert a right of which he might not be aware or to do so in contravention of the court's instructions that the defendant speak to the court through counsel"). This suggestion elides the circumstances under which this Court and others have held that a district judge must inquire further into whether a defendant is knowingly and voluntarily waiving his right to testify: a court

may be required to so inquire if the court either becomes aware of the defendant's stated wish to testify or of the presence of a conflict between a defendant and his attorney. *See, e.g., United States v. Manjarrez*, 258 F.3d 618, 624 (7th Cir. 2001); *Webber*, 208 F.3d at 552; *United States v. Sys. Architechts, Inc.*, 757 F.2d 373, 375-76 (1st Cir. 1985). With that clarification, I agree that Hodge has not shown that his waiver of his right to testify was involuntary or unknowing.

## III.

Turning to Hodge's (primary) ineffective assistance claim, the issue is whether Hodge's counsel was so deficient during his cross-examination of Sherry Hamilton that Hodge is entitled to a new trial. I think so. To establish ineffective assistance of counsel, a claimant must show two things: "A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 687). This performance is measured by an "objective standard of reasonableness" with an eye to "prevailing professional norms." *Strickland*, 466 U.S. at 688. Prejudice occurs when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Stated differently, "[w]e do not ask whether [the defendant] was ultimately innocent, but, rather, whether he was deprived [of] a reasonable shot of acquittal." *Avery v. Prelesnik*, 548 F.3d 434, 439 (6th Cir. 2008). Moreover, habeas claims are governed by the now familiar standards of the Antiterrorism and Effective Death Penalty Act of 1996, under which the writ may be granted only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

It is no surprise that Hodge's counsel's cross-examination of Sherry Hamilton was a train wreck considering that he failed to prepare for it. For example, at the beginning of his questioning, he asked Hamilton if they had ever spoken before, and she replied that they had not. The ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases require counsel to "conduct thorough and

independent investigations" to prepare for their cases. ABA Guideline 10.7 (2003). And, though it was no longer in effect, the previous version of the ABA's Guidelines explicitly required counsel to interview government witnesses. No competent lawyer would fail to interview the key—indeed the only in-person—witness against his client.

Preparation aside, Hodge's counsel was utterly ineffective during the cross-examination itself. He began by attempting to impeach Hamilton as a liar and a jealous ex-spouse, but his questioning soon veered off into the irrelevant but harmful before disintegrating into the totally devastating. (Keep in mind that none of the following was addressed during Hamilton's direct examination.) Hodge's lawyer first brought up an irrelevant "immigration scam," of which Hodge was the chief architect.

> Q:    Okay. Now, after you were divorced from Mr. Pelfrey you got married a second time, correct?
> A:    Yes, sir; I did.
> Q:    And that was to Mr. Wong.
> A:    Yes, sir.
> Q:    And that was basically an immigration scam, correct?
> A:    If that's what you want to call it; yes, sir. I married him so he could become a citizen of the United States. I lived with Benny Hodge the whole time I was married to him. The Chinese man, Mr. Wong, only stayed in the house with us a couple of nights. He slept in one bedroom and Benny Hodge and I slept in the other.
>       . . .
> Q:    And you were paid money for marrying Mr. Wong, correct?
>       . . .
> A:    I was paid $10,000 cash up front. He paid mine and Mr. Hodge's utilities, rent, phone bill, cable, car insurance, and bought us a car.

J.A. 888-89.

Next, Hodge's lawyer asked Hamilton if Hodge ever dyed his hair, which elicited the reply, "Yes . . . . When he was on the run." J.A. 891. Hodge's lawyer then switched subjects, apparently deciding that the best way to establish his client's innocence was to detail the specifics of his drug abuse.

> Q:    And for the most part during that time period, was Mr. Hodge using substantial amounts of cocaine?

A:     Not to my knowledge, no.
Q:     Okay. I mean, in fact, Mr. Hodge didn't use cocaine; is that correct?
A:     On occasion, he may. But as an everyday thing? No, sir; he did not.
Q:     Okay, and for the most part, he was a bodybuilder, correct?
A:     Yes, sir, he smoked pot every day.
Q:     Okay. He smoked pot every day?
A:     Yes, sir.
Q:     And did he drink alcohol?
A:     No, sir. He might drink occasionally, when he was with his girlfriend.

J.A. 892-93. All this was apropos of nothing. Hodge's counsel then switched topics again, asking if Hamilton "remember[ed] in [19]85 when [Hodge] wore a beard frequently?" Her predictable reply: "Yes, sir; he'd wear a beard unless he was fixing to do a job, and he would shave it off." J.A. 893.

Hamilton was obviously a hostile witness, and, later during cross-examination, she began to give long monologues about her belief in Hodge's guilt and speculation about what Hodge was capable of. Yet Hodge's lawyer sat idly by. For example, Hamilton stated:

> . . . . Now, I must tell the truth. The Morris family and others have to know the truth. This man is guilty of murder. He does not deserve to be free, because he will do it again. And I may be the next person he kills, because he has threatened me several times to take my life.

Hodge's counsel responded, rather, well, passively, as the Kentucky Supreme Court observed:

> At no time during or after the cross-examination of Hamilton did defense counsel object to her answers, request that the witness be admonished against testifying about "other crimes," or request that the jury be admonished to disregard her answers. Nor did defense counsel object or ask for an admonition during the prosecutor's inquiries on redirect. It was only after Hamilton had been excused and the jury had been discharged for the weekend that defense counsel moved for a mistrial on the basis of an alleged violation of the pre-trial order [not to make reference to the previous trial].

*Hodge v. Commonwealth*, 17 S.W.3d 824, 846 (2002). This was worse than foolish, it

was inept. Indeed, most of the testimony elicited by Hodge's own lawyer (a) was otherwise inadmissible, and (b) was later belabored during the prosecution's closing argument. The majority concedes that this cross examination was "extremely damaging."

Yet the Kentucky Supreme Court's analysis of Hodge's ineffective assistance claim, reads, in its entirety:

> Hodge contends that defense counsel was deficient in the investigation and cross-examination of his former wife. The issue on direct appeal was the admission of [prior bad acts] evidence. We held that counsel's continued cross examination of an obviously hostile witness was a tactical decision. *Trial strategy will not be second-guessed in a [post-conviction] proceeding.*

*Hodge v. Commonwealth*, 116 S.W.3d 463, 473 (Ky. 2003) (quotations omitted) (emphasis added). This is hogwash. As the majority also concedes, Kentucky's courts failed to give his claim any meaningful review, so we must do our own de novo review of these claims, though the state court's ultimate conclusions nevertheless must receive a dollop of deference under the AEDPA. But the majority, like the state court, falls under the seductive notion that the word "strategy" somehow deflects all meaningful review. Wrong: "[T]he label 'strategy' is not a blanket justification for conduct which otherwise amounts to ineffective assistance of counsel." *White v. McAnnich*, 235 F.3d 988, 995 (6th. Cir. 2000). The entire point of an ineffective assistance of counsel claim is to "second-guess" trial strategy, though with deference for legitimate—and reasonable—strategic choices. *See Miller v. Anderson*, 255 F.3d 455, 458 (7th Cir. 2001) ("The fact that it was a tactic obviously does not immunize it from review in a challenge to the lawyer's effectiveness. Tactics are the essence of the conduct of litigation; much scope must be allowed to counsel, but if no reason is or can be given for a tactic, the label 'tactic' will not prevent it from being used as evidence of ineffective assistance of counsel.").

The only reason Hodge's counsel proffered for his disastrous cross-examination performance—that he didn't want to draw attention to Hamilton's answers—is inadequate given how predictably harmful Hamilton's testimony was. Nor does it explain the inanity of his questioning, full as it was with discussions of Hodge's past

crimes and drug abuses. Indeed, very little of what went on approaches the term "strategy." There was nothing "strategic" about a failure to prepare, and there was nothing strategic about a bumbling, meandering cross-examination that let in a flood of otherwise inadmissible evidence. And, even if counsel's failure to object or request an admonishment regarding Hamilton's errant statements could in some fashion be labeled a "strategic choice" or a "tactic" in some absurd, Pollyannish sense, it was so unreasonable that it cannot pass constitutional muster. Thus, because there were not even minimally intelligent reasons given to explain this inadequate lawyering, I think the state courts unreasonable in determining that Hodge's counsel was not constitutionally deficient.

Having concluded that Hodge's counsel was inadequate, I have no doubt Hodge was prejudiced by the error. The state had no direct evidence linking Hodge to the murders, and both the Kentucky Supreme Court and the majority agree that Hodge was convicted on the basis of Hamilton's and Bartley's (at-times contradictory) testimony. Further, Bartley did not even testify in person at the second-trial—his testimony was merely read to the jury. Sherry Hamilton was the state's key witness linking Hodge to the murders, and she was the only such major witness to testify in person. Unsurprisingly, the jury's decision was apparently quite close: the jurors at one point announced that they were deadlocked and they requested a review of the testimony before delivering their verdict. Hodge's counsel's disastrous cross-examination cost Hodge a reasonable shot at acquittal. *See Avery*, 548 F.3d at 439. Thus, because the state courts were unreasonable in concluding that Hodge's counsel was not constitutionally deficient, he is entitled to a new trial. I respectfully dissent.