PEOPLE v SMITH

Docket No. 130483. Submitted March 3, 1992, at Lansing. Decided
July 20, 1992, at 9:40 A.M.

Michael J. Smith pleaded guilty in the Ingham Circuit Court,
James R. Giddings, J., to a reduced charge of unarmed robbery
and was sentenced to one year in jail and five years' probation.
He subsequently violated conditions of probation by, among
other things, failing to abide by the terms of an electronic
tether program. He was sentenced to five to fifteen years'
imprisonment, despite a minimum term of zero to thirty-six
months recommended in the sentencing information report. He
appealed.

The Court of Appeals *held:*

1. The sentencing guidelines, although strictly not applicable
to a probation violation, are invaluable in determining a pro-
portionate sentence for such a violation and should be used as a
starting point in determining the continuum within which the
sentence should fall. A trial court remains free to consider the
defendant's actions and the seriousness and severity of the
facts and circumstances surrounding the probation violation in
ariving at the proper sentence. The sentence imposed in this
case does not violate the principle of proportionality.

2. The defendant properly did not receive credit toward the
sentence for time spent in the electronic tether program.
Participation in that program was not equivalent to confine-
ment in jail.

Affirmed.

*Frank J. Kelley,* Attorney General, *Thomas L.
Casey,* Solicitor General, *Donald E. Martin,* Prose-
cuting Atorney, and *Samuel R. Smith,* Chief Ap-
pellate Attorney, for the people.

State Appellate Defender (by *Sheila N. Robert-
son*), for the defendant on appeal.

Before: Marilyn Kelly, P.J., and McDonald and G. S. Allen,* JJ.

G. S. Allen, J. Pursuant to a plea bargain, defendant pleaded guilty to a reduced charge of unarmed robbery, MCL 750.530; MSA 28.798. On December 14, 1988, he was sentenced to one year in the Ingham County Jail and placed on five years' probation. The terms of probation included a requirement that he continue drug rehabilitation services and attend school or obtain training for employment. Defendant was released from jail on June 8, 1989, and within two months committed five violations of probation, including failure to obtain vocational training or employment and testing positive for drug use.

On September 6, 1989, defendant pleaded guilty of probation violation and was sentenced to six to fifteen years' imprisonment. However, sentence was delayed to allow defendant to attend a boot camp program of the Department of Corrections. Defendant successfully completed the boot camp program, and at a delayed sentence hearing on January 10, 1990, the prison sentence was vacated and defendant was continued on probation. However, defendant was placed in an electronic tether program.

Shortly thereafter, defendant violated probation by refusing to answer his telephone as required by the electronic tether agreement and by leaving his home on February 21, 1990. When the police tried to pick up defendant on a warrant issued by the court, defendant's brother and sister interfered with the police, and defendant fled. He remained at large until some two months later, when he was arrested on April 17, 1990. Upon arrest, defendant

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

fought with the police. On May 16, 1990, the court sentenced defendant to six to fifteen years in prison in accordance with the sentence imposed on September 6, 1989. After hearing defendant speak following the imposition of sentence, the court amended its sentence to five to fifteen years, though stating that defendant deserved a six- to fifteen- year sentence.

At sentencing, the trial court was provided with a sentencing information report (SIR), which suggested a minimum sentence range of zero to thirty-six months. The statutory maximum penalty for the underlying offense of which defendant pleaded guilty (unarmed robbery) is fifteen years.

The first issue raised on appeal is whether the sentencing guidelines should apply to defendant's sentence for probation violation. Relying heavily on the recent case of *People v Peters,* 191 Mich App 159; 477 NW2d 479 (1991), defendant argues that, although sentencing guidelines were not intended to apply to probation violations, they still are an "invaluable tool" to be used as a "barometer" of the principle of portionality established in *People v Milbourn,* 435 Mich 630, 635-636; 461 NW2d 1 (1990). (BRICKLEY, J.)

This Court has consistently held that the sentencing guidelines do not apply to probation violations, *People v Young,* 181 Mich App 728, 731; 450 NW2d 43 (1989); *People v Reeves,* 143 Mich App 105, 107; 371 NW2d 488 (1985), and that sentences for probation violation should comply with the principle of proportionality announced in *Milbourn. People v Leske,* 187 Mich App 153, 158; 466 NW2d 361 (1991). Most recently, in *People v Peters, supra,* a panel of this Court, after first stating that the sentencing guidelines are not applicable to violations of probation, went on to note that

they may be utilized as "a starting point" in determining a sentence. *Id.,* 167.

However, *Milbourn* holds that the second edition of the guidelines is the best "barometer" for use in measuring the proportionality of a given sentence. *Id.,* 656. Under existing precedent, factoring in the sentencing guidelines when sentencing for a probation violation is a difficult proposition, requiring a second analysis of the guidelines initially prepared for defendant's underlying offense. *Peters,* 167. Under these circumstances, the guidelines should be utilized only as a starting point in determining the continuum within which the sentence should fall. The trial court is at liberty to consider defendant's actions and the seriousness and severity of the facts and circumstances surrounding the probation violation in arriving at the proper sentence. The reasons for the sentence imposed should be articulated on the record. *Id.*

Given the circumstances of the underlying offense, the reduced charge of unarmed robbery, the repeated instances of probation violation, and defendant's vita, we conclude that the sentence does not violate the principle of proportionality. We come to this conclusion regardless of whether the sentencing guidelines are utilized as a "barometer" or as a "starting point" from which to determine the proportionality of the sentence. Contrary to the defense claim, defendant had more than a peripheral role in the armed robbery. In pleading guilty, he said that he participated in the robbery as an intimidator and received a gold neck chain for his efforts. At the time he was originally sentenced in this case, defendant was already serving a jail sentence for a plea-based conviction of receiving and concealing stolen goods with a value in excess of $100, reduced from an original charge of breaking and entering an occupied build-

ing. Defendant's juvenile record includes a misdemeanor larceny, two breaking and enterings, carrying a concealed weapon, confinement at the Boy's Training School, and a lack of response to programs available in the juvenile system. Given these circumstances, as well as the fact that when twice given a "break" by the sentencing court defendant repeatedly broke the terms of his probation and electronic tether program, we find that the sentence imposed does not violate the principle of proportionality.

The second issue raised on appeal is whether defendant is entitled to receive credit against his sentence for the time he spent in the electronic tether program. This issue is one of first impression in Michigan. The recently developed electronic tether system is used throughout the United States as an alternative to prison. See Note, *Home incarceration under electronic monitoring: A statutory review,* 7 NYL Sch J Human Rights 285 (1990). As authority for the claim that credit should be granted, defendant cites *People v Granquist,* 183 Mich 343; 454 NW2d 207 (1990), for the proposition that confinement in one's home under a tether program is the equivalent of confinement in prison. Defendant further argues that "since the tether program is equivalent to actual incarceration, the double jeopardy clause requires that he be granted additional credit against his sentence."[1] We disagree on both grounds.

Defendant reads *Granquist* too broadly. After first holding that escape from one's own apartment is an escape from prison under the liberal descrip-

---

[1] Defendant does not ask for credit pursuant to the sentence credit statute, MCL 769.11b; MSA 28.1083(2), but rather on double jeopardy grounds. See *People v Sturdivant,* 412 Mich 92, 96; 312 NW2d 622 (1981). Indeed, defendant is clearly not entitled to credit under the statute. *People v Whiteside,* 437 Mich 188, 196-197; 468 NW2d 504 (1991).

tion of "prison" contained in the prison escape statute, MCL 750.193(2); MSA 28.390(2), the *Granquist* Court then stated that "tether" is not a prison:

> We agree with defendant's argument that the electronic tether was not a "prison"; but the tether was not intended to form the bounds of defendant's physical confinement. *The electronic tether is nothing more than a surveillance device which permits corrections officers to monitor a defendant's presence in his approved residence during curfew hours. [Id., 346-347.* Emphasis added.]

Under no circumstances can we reasonably conclude that confinement in one's home or apartment is the equivalent of confinement "in jail." This is so even where, as here, the conditions of home confinement require the person confined to go directly to work, to return home immediately from work, and to be at home at all times unless approval is given by a probation officer. Home detention does not include the highly structured setting of a prison or jail. One cannot remain on the phone for extended periods, invite friends for extended visits, order a pizza, watch television during periods of one's own choosing, or have free access to the refrigerator in jail.

For the foregoing reasons, defendant's conviction and sentence are affirmed.