RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 08a0422p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

CHAMAR AVERY,

*Petitioner-Appellee,*

*v.*

No. 07-2522

JOHN PRELESNIK,

*Respondent-Appellant.*

Appeal from the United States District Court for the
Western District of Michigan at Grand Rapids.
No. 04-00289—Richard A. Enslen, District Judge.

Argued: October 29, 2008

Decided and Filed: November 25, 2008

Before: MARTIN and GILMAN, Circuit Judges; DOWD, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Janet A. VanCleve, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Chari Grove, STATE APPELLATE DEFENDER OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Debra M. Gagliardi, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Chari Grove, STATE APPELLATE DEFENDER OFFICE, Detroit, Michigan, for Appellee.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. Petitioner Chamar Avery was convicted in Michigan state court of second degree murder. After exhausting his state appeals, Avery petitioned for a writ of habeas corpus in federal district court. The district court granted his petition, holding that Avery was deprived of his right to effective assistance of counsel when his attorney failed to investigate and interview potential alibi witnesses and that the Michigan Court of Appeals's conclusion to the contrary was objectively unreasonable. We agree and AFFIRM the district court's well-reasoned judgment.

_____

[*] The Honorable David D. Dowd, Jr., Senior United States District Judge for the Northern District of Ohio, sitting by designation.

1

I.

The facts appear in detail in the district court opinion, *Avery v. Prelesnik*, 524 F. Supp. 2d 903 (W.D. Mich. 2007), and we summarize them here. On January 15, 2000, between 7:30 and 8:00 in the evening, pizza delivery man Geoffrey Stanka was shot and killed on Dayton Street in Detroit, Michigan. Subsequently, Chamar Avery was charged in state court with first degree felony murder and felony firearms possession for his alleged role in Stanka's death. David Lankford served as Avery's trial attorney. Before trial, Avery told Lankford that he could not have committed the murder because at that time, he was thirty minutes away from Dayton Street with his friend, Damar Crimes, waiting for his car to be repaired. Yet Lankford did not present an alibi defense at trial. Avery was convicted of second degree murder and was sentenced to twenty to fifty years in prison.

Following his conviction, Avery appealed to the Michigan Court of Appeals, which remanded the case for post-conviction proceedings. The trial court held an evidentiary hearing on the issue of whether Avery's counsel was ineffective for failing to present an alibi defense at trial. At the hearing, Lankford, Avery, Crimes, and Crimes's friend, Darius Boyd, testified. After those witnesses testified, the judge ruled from the bench that Avery was not denied effective assistance of counsel, finding that Lankford made "cogent decisions . . . and the way he conducted himself was more than adequate, was very good." The judge characterized Crimes's and Boyd's testimony that they were with Avery at the time of the murder to be "incredibly inconsistent on some basic times and facts." Though she did not explicitly analyze Crimes's testimony, she found Boyd's to be "totally incredible," suggesting "a manufacturing of testimony."

Avery appealed, and the Michigan Court of Appeals rejected his ineffective assistance of counsel claim, concluding that "counsel made a valid strategical decision not to present [an alibi] defense because the information [Lankford] obtained did not provide defendant with an alibi for the time of the crime." *People v. Avery*, 2002 WL 31264726, *1 (Mich. Ct. App. 2002). The court of appeals did not analyze or even mention the substance or credibility of Crimes's or Boyd's testimony, but rather, relying on Lankford's testimony about his investigatory efforts, concluded that "counsel adequately investigated." *Id.* The Michigan Supreme Court denied Avery leave to appeal.

Avery filed a petition for a writ of habeas corpus in federal district court. A magistrate judge issued a report recommending the writ be granted, which the district court adopted in November 2007. It found that Lankford's investigatory efforts were deficient, and that Avery suffered prejudice in his trial as a result. *Avery*, 524 F. Supp. 2d at 906-10. The district court denied the State's subsequent motion for stay. The State now appeals.

II.

We review a district court's decision regarding a habeas petitioner's claim of ineffective assistance of counsel *de novo*. *Higgins v. Renico*, 470 F.3d 624, 630 (6th Cir. 2006). Under the Antiterrorism and Effective Death Penalty Act of 1996, a district court shall not grant a habeas petition with respect to any claim that was adjudicated on the merits in the state courts unless the adjudication resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal court may grant habeas if the state court arrived at a conclusion opposite to one reached by the Supreme Court on a question of law, or if the state court decided a case differently than the Supreme Court on materially indistinguishable facts. *Boykin v. Webb*, 541 F.3d 638 (6th Cir. 2008) (citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). Under the "unreasonable application" clause, a habeas court may grant the writ if the state court identified

the correct legal principle from the Supreme Court's decisions but unreasonably applied it to the petitioner's case. *Id.* Although courts of appeals' decisions do not establish new rules, the court may look to such decisions to inform its analysis of whether a legal principle had been clearly established by the Supreme Court. *Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir. 2003). Finally, the habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings were correct. 28 U.S.C. § 2254(e)(1); *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

### III.

Claims of ineffective assistance of counsel have two parts: "A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The Supreme Court assesses performance using an "objective standard of reasonableness" and "prevailing professional norms." *Strickland*, 466 U.S. at 688. Prejudice occurs when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### A.  Failure to Investigate as Deficient Performance

Avery argues that his trial counsel's efforts to investigate potential alibi witnesses in preparation for trial were deficient. *Strickland* instructs:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S. at 690-91. "Under *Strickland*, trial counsel has a duty to investigate his case." *Stewart v. Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2006). "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Id.* (quoting *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005)).  Thus, the question is whether "reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 691.

Here, Lankford made at least some attempt to contact the alibi witnesses whose names Avery had provided him:  He sent an investigator to Crimes Auto and Towing, where Avery had told Lankford he could contact potential alibi witnesses; the investigator met with LaVelle Crimes (Damar Crimes's brother), who reported that Avery had left his car for repairs and departed with Damar Crimes to visit someone on Ardmore Street, returning at approximately 9:15 or 9:30 that evening; Lankford believed the investigator had left information on how to contact Lankford; and Lankford testified that he instructed the investigator to attempt to follow-up over the phone and in person.  These efforts satisfied the Michigan Court of Appeals, which concluded that Lankford "adequately investigated" Avery's potential alibi witnesses and that he "made a valid strategical decision not to present such a defense because the information he obtained did not provide defendant with an alibi for the time of the crime." *People v. Avery*, 2002 WL 31264726 at *1.

But we believe that Lankford's investigation was far "less than complete." *See Strickland*, 466 U.S. at 691.  He never personally attempted to contact *any* of the potential alibi witnesses, and, after the investigator learned from LaVelle Crimes that Avery was with Damar Crimes during the time of the murder, the investigator did not ask for Damar's home address or phone number, even

though LaVelle Crimes could have provided it. At the evidentiary hearing, Lankford testified that after the report from the investigator, he was "interested . . . sound[ed] like I want to talk to Damar." But at the time, LaVelle Crimes was only seventeen years old, and the investigator (and consequently Lankford) left it up to him to get back in touch with important alibi evidence in a murder trial. We agree with the district court's recognition that "[t]his sequence of events shows just how unreasonable it was for a seasoned attorney like Lankford to leave it up to teenagers to get back in touch with him about important alibi evidence in a murder trial." *Avery*, 524 F. Supp. 2d at 909.

The State, nevertheless, argues that Lankford "had inadequate information on which to base an alibi defense, not through lack of investigation but because of inconsistent accounts of the events on the evening of the murder." But the limitations on Lankford's investigation rendered it impossible for him to have made a "strategic choice" not to have Damar Crimes or Darius Boyd testify because he had no idea what they would have said. There is no reason based on "professional judgment" why Lankford would not have pursued speaking to Damar Crimes. The district court correctly concluded that "Lankford was under a duty to reasonably investigate, which entails, at the bare minimum, asking for Damar's phone number or address and reasonably attempting to contact him." *Id.* The district court also correctly observed, this does not mean that Lankford was under an obligation to actually track down Damar Crimes, only that he put in a reasonable effort to do so. For these reasons, we affirm the district court's decision that the Michigan Court of Appeals unreasonably applied *Strickland* in deferring to Lankford's decision to end his less than complete investigation.

## B. Prejudice from Failure to Investigate

To satisfy *Strickland's* prejudice prong, Avery must demonstrate that with effective assistance of counsel, the result of his trial would have been different with a "probability sufficient to undermine the confidence in the outcome." 466 U.S. at 694. He must show "a reasonable probability" that absent his trial attorney's errors, "the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

Because the Michigan Court of Appeals found Lankford's efforts to be sufficient, it did not analyze whether Avery suffered prejudice. Similarly, the trial court that conducted the post-conviction evidentiary hearing found that Lankford provided effective assistance of counsel. Though the judge presiding over the hearing observed, "I can't say that this would have resulted in a different result at all," we do not find in the record evidence that the trial court seriously engaged in a complete *Strickland* prejudice analysis, which requires a court to "consider the totality of the evidence before the judge or jury." *Id.* Thus, here, as in *Rompilla v. Beard*, 545 U.S. 374, 390 (2005), "[b]ecause the state courts found the representation adequate, they never reached the issue of prejudice, and so we examine this element of the *Strickland* claim *de novo*." *See also Wiggins*, 539 U.S. at 534.

Avery's claim involves alibi witness testimony that the trial jury did not have before it. To evaluate a claim of prejudice, the court must assess how reasonable jurors would react to the additional alibi testimony had it been presented. In this case, the state judge presiding over the post-conviction evidentiary hearing, describing herself as the "the factfinder," found Boyd's testimony to be "totally incredible" and to suggest "manufacturing testimony." We do not denigrate the role of the factfinder in judging credibility when we review a record in hindsight, but evaluation of the credibility of alibi witnesses is "exactly the task to be performed by a rational jury," *see Matthews v. Abramajtys*, 319 F.3d 780, 790 (6th Cir. 2003), not by a reviewing court. *Cf. United States v. Kelly*, 204 F.3d 652, 656 (6th Cir. 2000) ("[D]etermining the credibility of witnesses is a task for the jury, not this court."). Here, although the factors the state judge highlighted in her credibility assessment – including Boyd's ability to remember exact times while failing to recall the date or

day of the week that Avery visited his home – may have ultimately affected the credibility of his testimony in the eyes of the jury, but they do not dispose of the issue of prejudice. Notably, the evidentiary hearing occurred approximately a year and three months after Avery's trial, and the record before us does not demonstrate that the presiding judge found fault with Crimes's testimony. Ultimately, as the district court properly recognized, "[O]ur Constitution leaves it to the jury, not the judge, to evaluate the credibility of witnesses in deciding a criminal defendant's guilt or innocence." *Avery*, 524 F. Supp. 2d at 909 (quoting *Ramonez v. Berghuis*, 490 F.3d 482, 490 (6th Cir. 2007)).

Moreover, *Strickland* instructs that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* Thus, the availability of willing alibi witnesses must also be considered in light of the otherwise flimsy evidence supporting Avery's conviction. *See Strickland*, 466 U.S. at 696. As the district court accurately observed, Avery's conviction was based almost entirely on Jacklyn Barker's eyewitness testimony, which was weak because the crime occurred at night when visibility was diminished and Barker was "peeking" at the crime scene from the window at her home across the road. Barker's testimony was also inconsistent: she testified at a preliminary hearing that she saw Avery smiling, but at trial testified that she "couldn't see his face." Nor did Barker identify Avery from a lineup as one of the individuals she witnessed at the murder scene, despite her testimony that she had known him since she "was little."

In sum, we agree with the district court's conclusion that potential alibi witnesses coupled with an otherwise weak case renders the failure to investigate the testimony sufficient to "undermine confidence" in the outcome of the jury verdict. We do not ask whether Avery was ultimately innocent, but, rather, whether he was deprived a reasonable shot of acquittal. Here, the jury was deprived of the right to hear testimony that could have supplied such "reasonable doubt."

*CONCLUSION*

Because the Michigan Court of Appeals's application of *Strickland* standard was unreasonable, we AFFIRM the district court's grant of Avery's petition for a writ of habeas corpus.