NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0726n.06

No. 08-2319

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Nov 05, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| AARON BYRD, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JAN TROMBLEY, Warden, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | |
| | ) | |

Before: MOORE, GIBBONS, and FRIEDMAN,[*] Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** The State of Michigan appeals the district court's grant of the writ of *habeas corpus* to petitioner-appellee Aaron Thomas Byrd following his conviction and appeal in state court for criminal sexual conduct involving a victim under the age of thirteen. Finding that the state courts had unreasonably applied clearly established federal law defining ineffective assistance of counsel, the district court held that Byrd's counsel provided ineffective assistance on three grounds: (1) failing to object to the introduction of, and introducing himself, Byrd's prior conviction for aiding and abetting forgery, which was arguably inadmissible under Michigan Rule of Evidence 609(c); (2) failing to object to the prosecution's attempt to characterize Byrd during closing argument using "bad man" evidence; and (3) failing to present expert testimony to counter the prosecution's experts. For the following reasons, we affirm.

———————————

[*]The Honorable Daniel M. Friedman, Senior Circuit Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

## I.

The facts in this case arise from Byrd's third trial – the first two resulted in hung juries. Byrd's stepdaughter, T.R.,[1] was seven years old when the alleged assault took place. According to T.R., Byrd would occasionally shower with her in the mornings after her mother left the house. T.R. testified that, on one occasion, she accompanied Byrd into the bedroom he shared with her mother, where he sexually assaulted her by touching her genitalia and having vaginal intercourse with her.

After T.R.'s allegations, Byrd informed a doctor that T.R. had a yellow discharge and had been touched in her genital area. Upon the doctor's recommendation, Byrd and T.R.'s mother reported the allegations. The State of Michigan brought charges against Byrd.

During the trial, prosecutors called as witnesses T.R.; Dr. Randy Haugen, a psychologist; and Dr. Steven Guertin, a pediatrician. During her testimony, T.R. "would often freeze, blank out" and pause for long periods of time while speaking. Dr. Haugen testified that T.R.'s responses and reactions on the witness stand were consistent with someone who had suffered from sexual abuse. Defense counsel did not present any expert testimony but was able to elicit statements from Dr. Haugen that T.R.'s responses could also be consistent with someone who was lying.

Dr. Guertin testified that when he examined T.R., he noticed a very deep, v-shaped notch in her hymen. Dr. Guertin determined that the injury was anywhere from one week to one year old and was consistent with genital-to-genital contact. While he acknowledged that there were other possible

---

[1]In accordance with Federal Rule of Criminal Procedure 49.1(a), we redact the name of a minor and will refer to her by her initials.

causes for the injury, including an accident, Dr. Guertin testified that the most common cause was sexual contact.

Byrd testified on his own behalf at trial and denied all allegations of sexual assault against him. He acknowledged that he occasionally helped T.R. rinse her hair when she was showering and her mother was not there, but he denied showering with her. Byrd testified that T.R. blamed him for the assault because he spanked her for lying on an unrelated occasion. According to Byrd, T.R. apologized to him after she made the allegations. He further explained that T.R.'s injury was likely caused by a bicycle accident. Defense counsel introduced Byrd's prior conviction for aiding and abetting forgery in 1989, which the prosecution then referred to during closing arguments.

On November 8, 2002, Byrd was convicted by a jury of first degree criminal sexual conduct involving a victim under the age of thirteen, in violation of Michigan Compiled Laws § 750.520b(1)(A). On December 5, 2002, he was sentenced to a term of ten to twenty-five years' imprisonment. Byrd appealed his conviction to the Michigan Court of Appeals and filed a motion for a new trial in the trial court, alleging ineffective assistance of counsel. After an evidentiary hearing, the trial court denied Byrd's motion for a new trial. The Michigan Court of Appeals affirmed Byrd's conviction, and the Michigan Supreme Court denied Byrd's subsequent application for leave to appeal.

Byrd filed a petition for a writ of *habeas corpus* in the United States District Court for the Eastern District of Michigan, alleging ineffective assistance of counsel on the basis of counsel's 1) failure to object to the introduction of Byrd's ten-year-old forgery conviction; 2) failure to object to the prosecutor's use of the conviction as "bad man" evidence during closing arguments; and 3) failure

3

to investigate and present an expert witness to counter the prosecution's witnesses. Adopting the magistrate judge's report and recommendation, the district court granted the petition for the writ of *habeas corpus* based on all three grounds of ineffective assistance of counsel. The State appealed to this court, claiming that the district court erred by granting Byrd *habeas* relief.

**II.**

We review *de novo* a district court's decision to grant a petition for the writ of *habeas corpus* based on ineffective assistance of counsel. *See Avery v. Prelesnik*, 548 F.3d 434, 436 (6th Cir. 2008). We review findings of fact by the district court for clear error unless the district court's factual determinations are based only on a review of the state court transcript, in which case they are reviewed *de novo*. *See Dando v. Yukins*, 461 F.3d 791, 796 (6th Cir.2006). Unless they are rebutted by clear and convincing evidence, we presume factual determinations by a state court to be correct. 28 U.S.C. § 2254(e)(1).

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a district court may only grant a writ of *habeas corpus* to a state prisoner when: (1) the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal court may grant *habeas* relief if the state court reaches a decision opposite to that reached by the Supreme Court on a question of law, or if the state court rules differently than the Supreme Court on materially indistinguishable facts. *See Boykin v.*

4

*Webb*, 541 F.3d 638, 642 (6th Cir. 2008) (citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J. for the Court)). Under the "unreasonable application" clause, a federal court may grant the writ if the state court identifies the correct legal rule from Supreme Court precedent but unreasonably applies the rule to the facts in the petitioner's case. *Williams*, 529 U.S. at 413. Furthermore, the district court cannot issue the writ under the "unreasonable application" clause merely because it concludes that the state court incorrectly or erroneously applied clearly established federal law; it may only grant *habeas* relief when the erroneous application is also objectively unreasonable. *See Rompilla v. Beard*, 545 U.S. 374, 404 (2005). In analyzing whether a state court decision is an "unreasonable application" of Supreme Court precedent, we must base our decision solely on the holdings of the Supreme Court, not its *dicta* or the holdings of courts of appeals. *Williams*, 529 U.S. at 412 (O'Connor, J. for the Court).

In order to obtain *habeas* relief, Byrd must thus demonstrate that the state court's decision that his counsel was not ineffective was contrary to, or an unreasonable application of, Supreme Court precedent. Byrd's claim rests squarely on the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), which created a two-part test for determining whether counsel's assistance was ineffective:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. To demonstrate ineffectiveness, Byrd "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, Byrd "must show

5

that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Smith v. Mitchell*, 567 F.3d 246, 257 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 694).

In this case, the State appeals the district court's determination that Byrd was denied his constitutionally guaranteed right to effective assistance of counsel when his lawyer: (1) introduced and failed to object to Byrd's prior conviction for aiding and abetting forgery; (2) failed to object to the prosecution's use of "bad man" character evidence during closing arguments; and (3) failed to present expert testimony countering the experts proffered by the prosecution. We find that *habeas* relief was properly granted on the first claim. We need not address whether the district court properly granted *habeas* relief on claims two and three.

"The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. "Prevailing norms of practice as reflected in American Bar Association standards . . . for Criminal Justice . . . are guides to determining what is reasonable. . . ." *Id.*; *see also Franklin v. Anderson*, 434 F.3d 412, 429 (6th Cir. 2006). According to the American Bar Association ("ABA") Criminal Justice Section Standards, defense counsel should "inform[] himself or herself fully on the facts and the law" before advising the accused. *ABA Standards for Criminal Justice* 4-5.1(a) (3d ed. 1993); *see also United States v. Williams*, 358 F.3d 956, 962 (D.C. Cir. 2004) (applying ABA Criminal Justice Section Standard 4-5.1(a) as a measure of professional norms in an ineffective assistance of counsel claim). Furthermore, "[d]efense counsel should not knowingly and for the purpose of bringing inadmissible

6

matter to the attention of the judge or jury offer inadmissible evidence. . . ." *ABA Standards for Criminal Justice* 4-7.5(b). The question is thus whether defense counsel reasonably informed himself as to the admissibility of Byrd's prior forgery conviction before introducing it at trial and whether Byrd has overcome the strong presumption that the act in question was part of "sound trial strategy." *Strickland*, 466 U.S. at 689.

Michigan Rule of Evidence 609(a)(1) allows the admission of prior convictions for "crime[s] contain[ing] an element of dishonesty or false statement." Because Byrd's prior conviction for forgery contains an element of dishonesty or false statement, it would normally be admissible at his trial. However, Michigan Rule of Evidence 609(c) ("Rule 609(c)") provides that "[e]vidence of a conviction . . . is not admissible if a period of more than ten years has elapsed since . . . the release of the witness from the confinement imposed for that conviction. . . ." Therefore, Byrd's prior forgery conviction was admissible at trial to challenge Byrd's credibility *only if* Byrd's release from confinement occurred within ten years of the trial testimony. Mich. R. Evid. 609(c). Byrd was released from prison on October 7, 1992, after serving three years' imprisonment for aiding and abetting forgery. Byrd testified in his trial for criminal sexual assault on November 7, 2002, ten years and one month after his release from prison. Had Byrd's attorney researched the facts and law concerning Byrd's prior conviction, he likely would have objected to the introduction of the prior conviction as inadmissible, and certainly would not have introduced the conviction himself. Byrd's attorney admitted during the *Ginther* hearing[2] that raising the conviction himself was an "oversight"

---

[2]In Michigan, a *Ginther* hearing is an evidentiary hearing regarding a claim of ineffective assistance of counsel. *See People v. Ginther*, 212 N.W.2d 922, 924 (Mich. 1973).

and not part of a trial strategy. He further acknowledged that the prior conviction is "something [he] normally would have objected to." (*Ginther* Hearing Tr. at 7.)

The State argues that although Byrd was released from prison in 1992, over ten years before the trial, he was restricted by an electronic tethering system, requiring him to be at home between midnight and 4:00 a.m., until 1994. No Michigan court has ruled directly on the issue of whether electronic tethering constitutes "confinement" for purposes of Rule 609(c). Noting the lack of state law on the issue, the Michigan trial court correctly determined that a dispositive resolution of the meaning of confinement was unnecessary at that stage. Instead, the state trial court properly identified the relevant issue as whether defense counsel was ineffective by failing to raise the *possibility* that the evidence could be inadmissible. The trial court then determined that the lack of a definitive answer on the meaning of confinement in appellate precedent justified Byrd's counsel's failure to raise the issue during trial:

> Given the lack of clarity and the apparent absence of any appellate law on this issue, can it be said that trial defense counsel's failure to raise this issue constitutes incompetence - performance below the standard expected of a criminal attorney? This Court concludes it does not, particularly when defendant's present counsel, even while arguing for a finding of trial counsel's incompetence, acknowledges that the law doesn't provide any definitive answer to the question.

*People v. Byrd,* No. 01-2857 FC, slip op. at 6 (Mich. Cir. Ct. Sep. 25, 2003). On appeal, the Michigan Court of Appeals upheld the trial court's determination, concluding that "it was arguable that the evidence could have been admitted over a defense objection. Defense counsel's performance cannot be deemed deficient for failing to advance a *novel legal argument*." *People v. Byrd*, No. 245624, 2004 WL 1801036, at *4 (Mich. Ct. App. Aug. 12, 2004) (emphasis added).

8

We find that an argument against the admissibility of a prior conviction is anything but novel. Indeed, the specific issue of whether release on a tether constitutes "confinement" under Michigan law is itself far from novel. As the Michigan Court of Appeals recognized, a long line of Michigan cases in other contexts has "interpreted the term 'confinement' narrowly, and [has] determined that placement on the tether program is not the equivalent of confinement in prison or jail." *Id.* at *2 (citing *People v. Britt*, 509 N.W.2d 914 (Mich. Ct. App. 1993); *People v. Reynolds*, 489 N.W.2d 128 (Mich. Ct. App. 1992); *People v. Smith*, 489 N.W.2d 135 (Mich. Ct. App. 1992); *People v. Wagner*, 485 N.W.2d 133 (Mich. Ct. App. 1992); *People v. Granquist*, 454 N.W.2d 207 (Mich. Ct. App. 1990)). Furthermore, all federal courts to have addressed "confinement" under the analogous Federal Rule of Procedure Rule 609(b) ("Rule 609(b)")[3] have read the rule narrowly and unanimously concluded that "confinement" is limited to actual imprisonment. *See, e.g.*, *United States v. Nguyen*, 542 F.3d 275, 279 (1st Cir. 2008) (non-jail sentence was not confinement and thus the prior conviction was inadmissible); *United States v. Rogers*, 542 F.3d 197, 198 (7th Cir. 2008) ("We conclude that probation does not constitute 'confinement' within the meaning of Rule 609(b)."); *see also United States v. Wallace*, 848 F.2d 1464, 1472-73 (9th Cir. 1988) (holding that reconfinement pursuant to revocation of parole based upon a non-substantively related charge was not "confinement" for purposes of Rule 609(b)).

---

[3]The pertinent text of Rule 609(b) states: "Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the *confinement* imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b) (emphasis added).

Thus, at the very least, Byrd had a strong argument that the prior conviction was inadmissible. Byrd is therefore not alleging ineffective assistance of counsel based on a novel reading of the relevant law or a fanciful argument that counsel should have raised at trial. His claim is that counsel was ineffective for introducing a prior conviction that counsel should have been attempting to suppress. As noted above, there is significant Michigan case law, as well as relevant federal law, to suggest that confinement under Michigan Rule of Evidence 609 should only refer to the period of incarceration and not tethering. While we recognize that the resolution of this legal issue is for the Michigan courts to decide, we find that defense counsel's performance was deficient because he introduced and failed to object to the previous conviction despite its potential inadmissibility. *See Glenn v. Sowders*, No. 85-5754, 1986 WL 18475, at *3 (6th Cir. Dec. 8, 1986) ("Because petitioner's prior . . . conviction was not admissible, defense counsel's decision to disclose the conviction falls outside the wide range of professionally competent assistance." (internal quotation marks and citation omitted)).[4]

---

[4]We note that the record indicates that Byrd's attorney may have been strategically introducing the conviction himself before the prosecution could use it to discredit Byrd:

> Q. . . . Were you convicted of something?
> A. Yes, I was.
> Q. What were you convicted of?
> A. Convicted of aiding and abetting forgery.
> Q. All right. When was that?
> A. In September, of '89.
> Q. Were you guilty of that?
> A. Yep, I knew that I was aiding it.
> Q. Did you plead to it?
> A. We pled guilty.
> Q. You pled guilty because you were guilty?
> A. I was guilty. . . .

10

In order to obtain *habeas* relief for ineffective assistance of counsel under *Strickland*, Byrd must show not only that defense counsel's performance was deficient but also that Byrd was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 687; *Mason v. Mitchell*, 543 F.3d 766, 780 (6th Cir. 2008). The standard set forth in *Strickland* for prejudice sufficient to warrant relief for ineffective assistance of counsel is a middle ground between two extremes. *Strickland*, 466 U.S. at 693-94. The standard does not require a showing that it is more likely than not that the outcome of the case would have been different had counsel provided effective assistance. *Id.* at 694. However, the petitioner cannot simply show that counsel's error had "some conceivable effect on the outcome. . . ." *Id.* at 693. Instead, the *Strickland* standard for prejudice requires that Byrd demonstrate a reasonable probability sufficient to undermine the verdict. *Id.* at 694.

---

> Q. This accusation that you molested a girl under the age of 13, you pled not guilty.
> A. Yes, I did.
> Q. Is that because you are not guilty?
> A. I am not guilty.

(Trial Tr. Vol. I at 115.) Byrd's attorney seems to have been attempting to present his client to the jury as a credible man who pleads guilty when he is guilty, and who would have pled guilty in this instance if he were in fact guilty. This tactic of reducing the negative implication of a prior conviction by framing it first themselves, in the light most favorable to the client, is a valid and effective tool of criminal defense attorneys. The application of such a mitigation strategy in this case, however, would have been unnecessary had Byrd's attorney known the relevant law. Instead of attempting to reduce the impact of the prior conviction on his client's credibility, Byrd's attorney should have been vehemently arguing against the prior conviction's admissibility as evidence in the first place. Failing to object to potentially inadmissible evidence, even if part of a defense plan, does not shield counsel from a claim of ineffective assistance based on "strategy." *See Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984) ("[E]ven deliberate trial tactics may constitute ineffective assistance of counsel if they fall 'outside the wide range of professionally competent assistance.'" (quoting *Strickland*, 466 U.S. at 690)); *James v. United States*, 217 F. App'x 431, 436 (6th Cir. 2005).

11

Here, we believe that there is a reasonable probability that, but for counsel's introduction and failure to challenge the admissibility of Byrd's forgery conviction, the jury would have found Byrd not guilty. The jury's verdict of whether Byrd was guilty of criminal sexual assault depended almost entirely on whose version of the facts the jurors believed. While both sides presented testimony about the relationship between T.R. and Byrd and the events prior to and after the alleged assault, the only evidence that Byrd committed a crime was T.R.'s testimony. Likewise, the only direct evidence presented that Byrd did not commit the crime was his own testimony at trial. Because the outcome turned on the jury's determination of whose testimony was more credible, there is a reasonable probability that Byrd's prior conviction affected the jury's opinion of his credibility and, accordingly, the verdict. *See, e.g.*, *United States v. Sims*, 588 F.2d 1145, 1150 (6th Cir. 1978) (holding that, when a previous trial had resulted in a hung jury and the defendant's "credibility was essentially the whole case," the introduction of defendant's prior convictions discredited defendant's testimony and led to a guilty verdict). Thus, there is a reasonable probability that defense counsel's introduction of, and failure to object to, Byrd's prior conviction – when credibility was essentially Byrd's entire defense – affected the outcome of the trial. As the two prior hung juries indicate, the case before the jury was extremely close. We therefore find that Byrd was prejudiced by counsel's deficient performance and that the Michigan courts' decision to the contrary was an unreasonable application of Supreme Court precedent. *See Rompilla*, 545 U.S. at 404. Accordingly, we affirm the district court's grant of *habeas* relief to Byrd on the ground that counsel provided ineffective assistance by introducing and failing to object to Byrd's prior conviction as evidence.

III.

12

For the foregoing reasons, we affirm the district court's grant of *habeas corpus* to Byrd. Consistent with the district court's order, the state of Michigan has 120 days from the issuance of our mandate to either retry or release Byrd.