**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4496
_____

DARROLL GREGG,
Appellant

v.

SUPERINTENDENT ROCKVIEW SCI;
ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA
_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:13-cv-00516)
District Judge: Honorable Mark R. Hornak
_____

Argued October 2, 2014
_____

Before: AMBRO, CHAGARES, and VANASKIE, *Circuit Judges*.

(Opinion Filed: January 12, 2015 )

Mark H. Rubenstein, Esq.
Suite 400
1034 Fifth Avenue
Pittsburgh, PA 15219

Suzanne M. Swann, Esq. [*ARGUED*]
Suite 1710
428 Forbes Avenue
Pittsburg, PA 15219
        *Counsel for Appellant*

Anthony S. Iannamorelli, Jr., Esq. [*ARGUED*]
Fayette County Office of District Attorney
61 East Main Street
Fayette County Courthouse
Uniontown, PA 15401
        *Counsel for Appellees*

———————————

OPINION[*]

———————————

VANASKIE, *Circuit Judge*.

A jury convicted Appellant Darroll Gregg of attempted murder and other related

offenses for his role in the 2009 shooting of Edward Harper. After his direct appeal and

efforts at obtaining post-conviction relief in state court proved unsuccessful, Gregg filed

a habeas corpus petition in the Western District of Pennsylvania alleging that his trial

counsel rendered ineffective assistance in violation of the Sixth Amendment by failing to

present the testimony of two alibi witnesses. The District Court denied his petition, and

we granted Gregg's request for a certificate of appealability on his ineffective assistance

of counsel claim. For the reasons discussed below, we will vacate the judgment of the

District Court and remand with directions to enter a conditional writ of habeas corpus.

I.

Shortly after 9:30 p.m. on March 18, 2009, in Fayette County, Pennsylvania,

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

Edward Harper responded to a knock at his apartment door. Looking through the peephole, Harper observed an acquaintance named Darrin Mackey and opened the door slightly. While speaking with Mackey, Harper saw a second individual he did not recognize emerge from the hallway stairwell with his face partially covered and a handgun pointed at Harper. Harper slammed the apartment door, pressed his body against it, and ordered his wife and children to get on the floor and call for help.

A gunshot rang out from the hallway; the bullet passed through the door and struck Harper in the left hand. Though wounded, Harper maintained his barricade. After several kicks to the door and additional shots that passed through the door and struck Harper in the chest, sternum, and head, the assailants fled without gaining entry into the apartment. Harper was rushed to the hospital and survived the attack, although bullets remain lodged in his body and shotgun pellets in his head.

After interviewing Harper, the Pennsylvania State Police focused their investigation on Mackey, age 17. When questioned, Mackey admitted that he was present during the shooting but initially denied any involvement. Mackey claimed that he was approached by two strangers looking to purchase marijuana, that he took them to Harper's apartment for that purpose, and that he was surprised when they unexpectedly started shooting at Harper.

Mackey subsequently changed his tune, telling police—and eventually testifying—that on the day of the shooting Stefan Fitzgerald stopped his car to pick up

3

Mackey. Mackey stated that Darroll Gregg, age 19, was also in the car, and that Gregg asked Mackey if he knew where to purchase marijuana. When Mackey suggested Harper's apartment, Gregg indicated that he had "some type of family problem" with Harper and wanted to "spank" him, which Mackey explained meant that Gregg wanted to shoot Harper. (App. at 47.)

Mackey further stated that he, Gregg, and Fitzgerald went to Harper's apartment with the plan to "bumrush" Harper and take money from him. (*Id.*) Mackey affirmed that while he was speaking with Harper in the apartment doorway, Gregg and Fitzgerald emerged from the stairwell, with Gregg carrying a shotgun and wearing a hood over his head and Fitzgerald carrying a handgun and wearing a shirtsleeve to cover his face. After Gregg and Fitzgerald fired on the door, the three individuals fled. At Mackey's suggestion, they hid the firearms at a nearby creek. Several days later, Mackey brought police to the creek and identified a shotgun and revolver hidden there as the weapons used by Gregg and Fitzgerald.

Thereafter, the Fayette County District Attorney's Office brought criminal charges against Gregg, Fitzgerald, and Mackey and prosecuted the individuals separately. Gregg stood trial for attempted murder and other related charges in November 2009,[1] with

---

[1] In addition to the attempted murder charge, Gregg faced charges of criminal conspiracy to commit murder, criminal conspiracy to commit robbery, aggravated assault, and reckless endangerment of another person.

Mackey serving as the prosecution's star witness. During trial, Gregg's public defender emphasized that it was only Mackey's testimony—and not any forensic evidence—that placed Gregg at the scene of the crime, tied the recovered firearms to the shooting, and connected Gregg with the firearms. Gregg's counsel challenged Mackey's credibility, noting the vast differences between Mackey's trial testimony and the first statement he provided to the police. Gregg's counsel further noted the favorable treatment Mackey received—having his case transferred to the juvenile system—in exchange for his agreement to testify against Gregg and Fitzgerald.

Gregg took the stand in his own defense, testifying that he was not involved in the shooting. Gregg claimed that he was with his friend Levi Jones and Jones's girlfriend, Tachicca "Weezy" Fitzgerald,[2] at the apartment of Jones's mother at the time of the shooting. Neither of these alibi witnesses, however, appeared at trial. The prosecutor, seizing on Gregg's election to testify in his own defense, introduced impeaching evidence of his juvenile adjudications for robbery, theft, receiving stolen property, and criminal conspiracy.

Following deliberation, the jury convicted Gregg on all counts. The trial judge sentenced Gregg to a term of imprisonment of 20 to 40 years, and the Superior Court of

---

[2] The record does not indicate any relation between Tachicca Fitzgerald and Stefan Fitzgerald.

5

Pennsylvania affirmed his conviction and sentence on direct appeal.[3]

After this unfruitful direct appeal, Gregg filed a counseled petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. §§ 9541-9546. The petition raised, among other things, the claim at issue on this appeal: that Gregg's trial counsel rendered ineffective assistance by failing to present the alibi testimony of Jones and Ms. Fitzgerald. In particular, Gregg noted that counsel failed to investigate or interview Ms. Fitzgerald, whom Gregg had identified as an alibi witness before trial by her nickname "Weezy." Gregg also took issue with trial counsel's failure to serve Jones with a subpoena, given that Jones did not appear for his scheduled pretrial interview at counsel's office and ultimately failed to appear at trial.

Over the course of two days, the PCRA Court held an evidentiary hearing on Gregg's ineffective assistance claim and the other issues raised in his petition. At the hearing, trial counsel explained that he originally intended to present Gregg's alibi defense by calling Jones as a witness, but after Jones failed to appear at trial and the court denied a request for continuance due to this absence, counsel's only recourse was to have Gregg take the stand, thereby opening himself up to impeachment through the introduction of his criminal record.

---

[3] Stefan Fitzgerald fared better at trial—he was acquitted after Mackey ultimately recanted his claim that Fitzgerald was involved in the shooting of Harper. As a transcript was not prepared following Fitzgerald's acquittal, we do not know the specifics of Mackey's testimony at this second trial.

6

Counsel also detailed his efforts to procure the alibi witnesses' attendance at trial, explaining that he first became aware of the alibi defense when he initially reviewed Gregg's file, which contained a note prepared by an investigator for the Fayette County Office of the Public Defender during an interview with Gregg. The note indicated that Gregg claimed to be with his friend Jones at the apartment of Jones's mother on Lenox Street in Uniontown at the time of the shooting. This note regarding Gregg's alibi also mentioned an individual identified by only the nickname "Weezy."

Counsel further explained that, during a meeting in October 2009, Gregg provided to him a cell phone number to contact Jones. Counsel, however, did not recall asking Gregg about an individual named "Weezy" or discussing whether Jones's girlfriend was also present at the Lenox Street apartment on the night of the shooting. Counsel reached Jones by telephone and indicated that he would call again when he needed Jones to come to counsel's office for an interview. Although Jones subsequently failed to appear for a scheduled interview, counsel testified that his office does not generally attempt to serve subpoenas on witnesses who appear willing to testify. Having made phone contact with Jones, counsel made no efforts to identify or locate "Weezy," the other potential alibi witness.

Counsel explained that he next spoke with Jones when he called Jones on the morning of the first day of trial. Although Jones agreed to come to the courthouse and meet before jury selection began, Jones failed to appear as scheduled. Counsel again

7

called Jones, this time indicating that he would send an investigator to transport Jones. Although Jones provided the address of the apartment where he was staying, Jones did not come out of the apartment when the investigator arrived or respond to subsequent phone calls from the investigator. Counsel explained that Gregg took the stand to present the alibi defense in Jones's absence, and that counsel first learned of the true identity of "Weezy" when Gregg referred to her on the stand by her given name, Tachicca Fitzgerald.

Jones and Ms. Fitzgerald also testified at the PCRA hearing. Jones generally confirmed counsel's account of the events, but added that, due to poor phone reception, he never got a call indicating that the investigator had arrived to transport him to the court. Ms. Fitzgerald explained that no one contacted her about testifying at trial, although she claimed to have accompanied Gregg and provided a statement when he voluntarily surrendered to police.

Following the close of the evidentiary hearing, the PCRA Court issued an opinion rejecting Gregg's request for a new trial. With respect to this ineffective assistance claim, the PCRA Court found that Jones and Ms. Fitzgerald were not willing to testify for the defense, had made themselves unavailable for trial, and lacked credibility. Under these circumstances, the court reasoned that counsel could not be deemed ineffective for failing to call these alibi witnesses. On appeal, the Superior Court affirmed, and the Supreme Court of Pennsylvania declined to review Gregg's case.

8

Finding no relief in state court, Gregg filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 in the United States District Court for the Western District of Pennsylvania, claiming that the PCRA Court unreasonably applied clearly established federal law when it rejected his claim that counsel was ineffective for failing to subpoena Jones or investigate the identity of "Weezy." The District Court referred the matter to a magistrate judge, who agreed with the reasoning of the PCRA Court and recommended the dismissal of Gregg's habeas petition and denial of a certificate of appealability. Over Gregg's objection, the District Court adopted the magistrate judge's recommendation and entered judgment against Gregg. Gregg filed a timely notice of appeal and an application for a certificate of appealability under 28 U.S.C. § 2253(c), which we granted.

## II.

The District Court had jurisdiction over Gregg's habeas petition pursuant to 28 U.S.C. § 2254. We have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253. Where, as here, the District Court based its decision on the state court record without holding an evidentiary hearing, we apply a plenary standard of review. *Branch v. Sweeney*, 758 F.3d 226, 232 (3d Cir. 2014).

While our review of the District Court's decision is plenary, we analyze the state court's decision with great deference in light of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2241-2254. *Branch*, 758 F.3d at 232. Because the state court denied Gregg's ineffective assistance claim on the merits, Gregg

9

"may obtain federal habeas relief under AEDPA only if the state court decision was (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Grant v. Lockett*, 709 F.3d 224, 231 (3d Cir. 2013) (quoting § 2254(d)).

## III.

Gregg argues that the PCRA Court unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984), when it rejected his ineffective assistance claim premised on trial counsel's failure to investigate the identity of one alibi witness and subpoena another. Under the now-familiar *Strickland* standard, Gregg must show that his counsel's performance was deficient and that this deficiency prejudiced his defense. *Id.* at 687.[4] We readily agree that Gregg has made this showing, and that the PCRA Court unreasonably applied *Strickland* in reaching a contrary conclusion.

---

[4] Although the PCRA Court recognized these general principles, it ultimately analyzed Gregg's claim under a more specific standard applied by Pennsylvania courts when ineffective assistance claims are predicated on counsel's failure to call a witness at trial. *See Commonwealth v. Clark*, 961 A.2d 80, 90 (Pa. 2008) (requiring defendant to establish that (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness's testimony was so prejudicial as to have denied defendant a fair trial). We recently noted that we were "troubled" by the requirement that a PCRA petitioner show that a witness was "ready, willing, and able to testify at trial." *Grant*, 709 F.3d at 239 n.10 (internal quotation marks omitted). We explained that "[a]bsent extenuating circumstances, such as the existence of a privilege or the witness's incapacity or death, whether a witness is

10

A.      Deficient Performance

To establish that his trial counsel's performance was constitutionally deficient under the first prong of *Strickland*, Gregg must identify acts or omissions of counsel that were outside the range of competent assistance in light of all of the circumstances. *Id.* at 690. The reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and conduct a "highly deferential" review of counsel's performance in order to reduce the "distorting effects of hindsight." *Id.* at 689. Mindful of this deferential standard, we nonetheless find that the failure of Gregg's trial counsel to investigate the identity of Ms. Fitzgerald and subpoena Jones falls outside the range of competent assistance.

Regarding the necessity of conducting pretrial investigations, *Strickland* instructs:

> [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 691. Here, counsel did not conduct a reasonable investigation into the identity of Ms. Jones, one of two alibi witnesses identified by Gregg before trial. In fact, the record reflects that counsel conducted no investigation at all. Despite receiving an investigator's

---

ready and willing to testify is irrelevant since defense counsel can compel testimony through a trial subpoena." *Id.* We reiterate that concern here.

11

note indicating that Gregg claimed to be with his friend Jones and an individual named "Weezy" at the apartment of Jones's mother on the night of the shooting, counsel never asked Gregg or Jones who "Weezy" was or how to contact her. Counsel only came to learn that "Weezy" was the nickname of Ms. Fitzgerald, Jones's girlfriend, when Gregg took the stand at trial and identified her by her given name. Counsel's inaction falls well short of the reasonable investigation that *Strickland* requires. *See Avery v. Prelesnik*, 548 F.3d 434, 438 (6th Cir. 2008) (upholding the district court's conclusion that counsel "was under a duty to reasonably investigate, which entails, at the bare minimum, asking for [an alibi witness's] phone number or address and reasonably attempting to contact him").

Similarly, counsel did not "make a reasonable decision that ma[de] particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The fact that Gregg provided counsel with the name, address, and telephone number of one alibi witness (Jones) did not render unnecessary an investigation into the other potential alibi witness (Ms. Fitzgerald), identified by nickname only. Especially given the gravity of the criminal charges Gregg was facing, counsel could not have reasonably elected to rely exclusively on Jones and forgo any investigation into Ms. Fitzgerald.

Counsel's efforts at ensuring the trial attendance of Jones—the lynchpin of Gregg's defense, made all the more important by counsel's failure to investigate the other potential alibi witness—also fall below the minimum threshold of competent assistance. Despite the fact that Jones had failed to appear for a scheduled pretrial interview, counsel

opted to have this unreliable teenage witness self-report to trial at an unidentified future date. Making matters worse, counsel waited until the morning of trial to call Jones and request his attendance that very day. That Jones failed to appear under these circumstances is unsurprising.

As we have previously noted, defense counsel can compel a witness to appear at trial and testify through the use of a trial subpoena. *See Grant*, 709 F.3d at 239 n.10. To provide competent assistance under the circumstances of this case, counsel should have employed such a measure, at a minimum, to ensure the attendance of the defense's key witness. Counsel has offered no principled or strategic reason for his failure to do so here, instead asserting that it is not generally his office's practice to subpoena a witness who appears willing to testify. This rationale is insufficient to justify counsel's failure. *See Coss v. Lackawanna Cnty. Dist. Att'y*, 204 F.3d 453, 462 n.9 (3d Cir. 2000) (en banc) (declining to disturb the district court's finding that counsel was deficient for failing to subpoena witnesses where she "claimed no tactical merit to her failures except to say that she must have done what [the defendant] wanted in not subpoenaing witnesses"), *rev'd on other grounds*, 532 U.S. 394 (2001).

Fairminded jurists would not disagree that counsel's failure to investigate Ms. Fitzgerald or subpoena Jones amounted to constitutionally deficient performance. Accordingly, we find that the PCRA Court unreasonably applied the first prong of *Strickland* by concluding otherwise.

13

B.    Prejudice

To satisfy the second *Strickland* prong and ultimately prevail on his ineffective assistance claim, Gregg must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  This standard is more easily met where the verdict is "only weakly supported by the record," as opposed to one with "overwhelming record support." *Id.* at 696.  Here, we readily conclude Gregg has demonstrated a reasonable probability that he would have prevailed at trial had his counsel presented the testimony of his alibi witnesses.

The Commonwealth's case against Gregg was, at best, weak.  It offered no forensic evidence that placed Gregg at the scene of the crime, tied the firearms recovered by the police to the shooting, or connected Gregg with those firearms.  Instead, the Commonwealth relied heavily on the testimony of Mackey, a cooperating witness who: (1) was the only person positively identified by the victim as being at the scene of the crime; (2) admitted to planning to rob the victim; (3) gave vastly differing accounts of the events in question before trial; and (4) ultimately recanted his testimony at a subsequent trial.  Counsel's failure to present the alibi testimony of Ms. Fitzgerald and Jones undercut Gregg's ability to contradict this already shaky evidence of guilt.  Furthermore, counsel's failure essentially compelled Gregg to take the stand in his own defense, which

14

opened the door to impeachment through the introduction of damaging evidence of his prior juvenile convictions.[5]

Given the weakness of the Commonwealth's case, the central importance of the alibi defense, and the clear damage stemming from the introduction of Gregg's criminal record, we believe that fairminded jurists would not disagree that there is a reasonable probability the alibi testimony of Jones and Ms. Fitzgerald would have changed the jury's verdict. We conclude, therefore, that the PCRA Court unreasonably applied the second *Strickland* prong as well.

## IV.

For the aforementioned reasons, fairminded jurists would not disagree that Gregg's counsel rendered ineffective assistance by failing to investigate the identity of one alibi witness and subpoena another. Because the PCRA Court unreasonably applied *Strickland* in reaching the contrary conclusion, we will vacate the District Court's order and judgment denying habeas relief and remand this matter with directions to release

---

[5] To the extent the PCRA Court found that Jones's and Ms. Fitzgerald's testimony was so incredible that its admission would not have created a reasonable probability of a different outcome at trial, this finding was an unreasonable application of clearly established federal law under § 2254(d)(1) and was based on an unreasonable determination of the facts before the court under § 2254(d)(2). It was unreasonable because the PCRA Court failed to consider: (1) the likelihood that had Jones and Ms. Fitzgerald testified to Gregg's alibi, Gregg would not have taken the stand and the jury would not have heard the evidence of his prior conviction; (2) the relative impact of their testimony in light of the scarcity of other inculpatory evidence; and (3) the lapse in time between the trial and PCRA evidentiary hearing.

15

Gregg from custody unless he is retried in the state court with the trial to commence within a period of time set by the District Court.